In the Matter of the Accounting of EDWARD C. RAFTERY et al., as Surviving Executors and Trustees under the Will of MAURICE A. SHEA, Deceased, Respondents. MARGARET L. SHEA et al., Appellants; O'BRIEN, DRISCOLL & RAFTERY et al., Respondents.

Argued January 3, 1956; decided February 17, 1956.

In the Matter of the Arbitration between EDMUND C. GRAINGER, Respondent, and SHEA ENTERPRISES, INC., et al., Appellants.

Argued November 30, 1955; decided February 17, 1956.

*F. Walter Bliss* and *Lawrence R. Condon* for appellants in the above-entitled accounting proceeding. I. Summary dismissal of objections to the trustees' account for the period 1940–1949 was erroneous. (*Green* v. *Doniger,* 300 N. Y. 238; *Hoffman House* v. *Foote,* 172 N. Y. 348; *Rudd* v. *Cornell,* 171 N. Y. 114; *Garrett* v. *First Nat. Bank & Trust Co. of Vicksburg,* 153 F. 2d 289; *Leonard* v. *Pierce,* 182 N. Y. 431; *Collins* v. *Hydorn,* 135 N. Y. 320; *Matter of Hubbell,* 302 N. Y. 246; *Matter of Seaman,* 275 App. Div. 484, 300 N. Y. 756; *Joseph* v. *Herzig,* 198 N. Y. 456; *Matter of Adler,* 164 Misc. 544.) II. Certain of appellants' objections to the accounting, covering the period after September 19, 1949, should have been sustained. (*Matter of Auditore,* 249 N. Y. 335; *Matter of Hoyt,* 160 N. Y. 607; *Bowditch* v. *Ayrault,* 138 N. Y. 222; *Matter of People [Bond & Mtge. Guar. Co.],* 303 N. Y. 423; *City Bank Farmers Trust Co.* v. *Cannon,* 291 N. Y. 125; *Opera on Tour* v. *Weber,* 285 N. Y. 348; *Murray* v. *Brancato,* 290 N. Y. 52.) III. The award of commissions was erroneous if appellants cannot question the trustees' account. (*Matter of Schliemann,* 259 N. Y. 497; *Hall* v. *Hall,* 78 N. Y. 535; *Matter of Piel,* 259 App. Div. 1047, 284 N. Y. 669.) IV. Raftery and Grainger were paid in full all executors' commissions and no double commissions are payable here. (*Cook* v. *Stockwell,* 206 N. Y. 481; *Olcott* v. *Baldwin,* 190 N. Y. 99; *Matter of Hayden,* 172 Misc. 669.) V. The value of the Shea stock was not fixed in accordance with well-established law. (*Matter of Roney,* 148 Misc. 70; *Matter of Reckford,* 181 Misc. 211; *Matter of Fulton,* 257 N. Y. 487; *People ex rel. Knickerbocker Fire Ins. Co.* v. *Coleman,* 107 N. Y. 541; *Matter of Silverman [Hoe & Co.],* 282 App. Div. 252; *Matter of Foster,* 239 App. Div. 806, 263 N. Y. 639.) VI. The courts below erred in awarding any counsel fees. (*Matter of O'Brien,* 146 Misc. 555; *Matter of Eddy,* 207 App. Div. 162; *Matter of Owen,* 144 Misc. 688; *Matter of De Beixedon,* 262 N. Y. 168; *Matter of Reibold,* 278 App. Div. 1013; *Matter of Weiler,* 281 App. Div. 703; *Dykman* v. *City of New York,* 183 App. Div. 859.) VII. Appellants were deprived of their constitutional right to trial by jury on the hearing of fee applications. (*Matter of Matheson,* 265 N. Y. 81; *Matter of Rosenberg,* 157 Misc. 490; *Matter of Proctor,* 267 N. Y. 109; *Matter of McKevett,* 253

App. Div. 919; *Matter of Anderson,* 136 Misc. 110; *Matter of Pardee,* 239 App. Div. 876.)

*Arthur F. Driscoll* and *John Drew* for Edward C. Raftery and others, respondents in the above-entitled accounting proceeding. I. The Surrogate did not err in refusing to retry objections involving happenings that antedated the terminal date of the intermediate account. Identical proposed objections had been heard in detail by the Referee, passed upon after careful study by the Surrogate, included in the appeal to the Appellate Division and urged on this court in support of a motion for leave to appeal. (*Tobias* v. *Ketchum,* 32 N. Y. 319; *Ward* v. *Ward,* 105 N. Y. 68; *Matter of Hopson,* 213 App. Div. 395; *Matter of Kohler,* 231 N. Y. 353; *Mee* v. *Gordon,* 187 N. Y. 400; *Matter of Edwards,* 279 App. Div. 841; *Susquehanna Silk Mills* v. *Rebora,* 238 App. Div. 100, 263 N. Y. 539; *People* v. *Continental Cas. Co.,* 301 N. Y. 79; *Kane* v. *Walsh,* 295 N. Y. 198; *Brooklyn Public Lib.* v. *City of New York,* 222 App. Div. 422.) II. All of the contentions under appellants' point II have to do with matters that were presented in detail before the Surrogate. III. The Surrogate would have been in error if he had refused to award commissions to the estate representatives. (*Matter of Kohler,* 231 N. Y. 353; *Orton* v. *Tannenbaum,* 194 App. Div. 214; *Matter of Mills,* 172 App. Div. 530; *Gilkinson* v. *Third Ave. R. R. Co.,* 47 App. Div. 472; *Mee* v. *Gordon,* 187 N. Y. 400; *Tobias* v. *Ketchum,* 32 N. Y. 319; *Ward* v. *Ward,* 105 N. Y. 68; *Matter of Hopson,* 213 App. Div. 395; *Matter of Schliemann,* 259 N. Y. 497.) IV. The Surrogate found as a fact that the value of the stock constituting the corpus was $3,000,000. There was ample evidence to support that finding. (*Matter of Fulton,* 257 N. Y. 487; *Matter of Silverman* [*Hoe & Co.*], 282 App. Div. 252.) V. Counsel for the estate representatives were entitled to compensation and the awards made by the Surrogate were modest when compared to the great amount of time and effort necessarily devoted to the matter. (*Matter of Young,* 156 Misc. 801; *Jessup* v. *Smith,* 223 N. Y. 203; *Matter of Gilman,* 251 N. Y. 265; *Matter of Proctor,* 267 N. Y. 109; *Matter of Bloomingdale,* 172 Misc. 218; *Matter of Mioducki,* 257 App. Div. 909; *Matter of Rosenberg,* 213 App. Div. 167; *Dykman* v. *New York,* 183 App. Div. 859.) VI. Appellants were not entitled

to a jury trial in the fixing of counsel fees. (*Matter of Boyle*, 242 N. Y. 342; *Matter of Stark*, 118 Misc. 240; *Matter of Beare*, 122 Misc. 519, 214 App. Div. 723; *Matter of Leary*, 175 Misc. 254; *Matter of Britton*, 187 Misc. 70; *Matter of Pardee*, 145 Misc. 634.)

*Thomas K. O'Brien* and *Arthur E. Sullivan* for Edmund C. Grainger and others, respondents in the above-entitled accounting proceeding. I. The Surrogate properly dismissed the objections to the trustees' account covering the period from 1940 to 1949. (*Matter of Shea*, 282 App. Div. 1013; *Schuylkill Fuel Corp. v. Nieberg Realty Corp.*, 250 N. Y. 304; *Smith v. Kirkpatrick*, 305 N. Y. 66; *Karameros v. Luther*, 279 N. Y. 87.) II. The Surrogate properly dismissed appellants' objections to the fiduciaries' final accounting for the period subsequent to September 19, 1949, the terminal date of the intermediate account. III. Accountants Raftery and Grainger are entitled to fiduciary paying out commissions. IV. The value of 2,400 shares of Shea Enterprises, Inc., was properly fixed by the Surrogate at $3,000,000. V. Counsel fees were properly awarded to the counsel for respondents. (*Matter of Britton*, 187 Misc. 70; *Corn Exch. Bank Trust Co. v. Bankers Trust Co.*, 268 N. Y. 224; *Matter of Maxwell*, 218 N. Y. 88; *Ellis v. Kelsey*, 241 N. Y. 374; *Jessup v. Smith*, 223 N. Y. 203; *Schoenherr v. Van Meter*, 215 N. Y. 548; *Woodruff v. New York, Lake Erie & Western R. R. Co.*, 129 N. Y. 27; *Downing v. Marshall*, 37 N. Y. 380; *Matter of Ungrich*, 201 N. Y. 415; *Matter of Van Volkenburgh*, 139 Misc. 437.)

*F. Walter Bliss* and *Lawrence R. Condon* for appellants in the above-entitled arbitration proceeding. I. There is no valid contract between these parties as the 1942 and 1946 alleged agreements are unenforcible. (*Matter of Level Export Corp.* [*Wolz, Aiken & Co.*], 305 N. Y. 82; *Matter of Kramer & Uchitelle*, 288 N. Y. 467; *Matter of Albrecht Chem. Co.* [*Anderson Trading Corp.*], 298 N. Y. 437; *Matter of Lipman* [*Haeuser Shellac Co.*], 289 N. Y. 76; *Matter of Hesslein & Co. v. Greenfield*, 281 N. Y. 26; *Matter of Metro Plan v. Miscione*, 257 App. Div. 652; *Matter of Manufacturers Chem Co.* [*Caswell, Strauss & Co.*], 259 App. Div. 321; *Matter of Cheney Bros.* [*Joroco*

*Dresses*], 218 App. Div. 652; *Ross* v. *Ross,* 233 App. Div. 626, 262 N. Y. 381; *Presbyterian Church of Albany* v. *Cooper,* 112 N. Y. 517.) II. The determination of the Surrogate as to the validity of the 1942. and 1946 contracts is not binding upon appellants. (*Clark* v. *Scoville,* 198 N. Y. 279; *Bell* v. *Merrifield,* 109 N. Y. 202; *Stowell* v. *Chamberlain,* 60 N. Y. 272; *Matter of Green,* 231 N. Y. 237; *Elenkrieg* v. *Siebrecht,* 238 N. Y. 254; *Louis J. Sigl, Inc.,* v. *Bresnahan,* 216 App. Div. 634; *Green* v. *Victor Talking Mach. Co.,* 24 F. 2d 378; *Haverhill* v. *International Ry. Co.,* 217 App. Div. 521, 244 N. Y. 582; *St. John* v. *Fowler,* 229 N. Y. 270; *Rudd* v. *Cornell,* 171 N. Y. 114.) III. Even though the 1946 contract is valid, respondent's claims are outside the scope of the arbitration provision therein. (*Matter of Riverdale Fabrics Corp. [Tillinghast-Stiles Co.],* 306 N. Y. 288; *Matter of Lehman* v. *Ostrovsky,* 264 N. Y. 130; *Matter of Kelley,* 240 N. Y. 74; *Matter of Philip Export Corp. [Leathertone, Inc.],* 275 App. Div. 102; *Doheny* v. *Lacy,* 168 N. Y. 213; *Cowee* v. *Cornell,* 75 N. Y. 91.) IV. Assuming the validity of the 1942 and 1946 agreements and the applicability of the 1936 arbitration clause, respondent's claims are not arbitrable as they are not bona fide. (*Matter of Essenson [Upper Queens Med. Group],* 307 N. Y. 68; *Matter of International Assn. of Machinists [Cutler-Hammer],* 271 App. Div. 917, 297 N. Y. 519; *Matter of General Elec. Co. [United Elec. Radio & Mach. Workers of America, C. I. O.],* 300 N. Y. 262; *Matter of Crosett [Mount Vernon Housing Auth.],* 275 App. Div. 1051; *Matter of Graphite Metallizing Corp. [United Elec. Radio & Mach. Workers of America, C. I. O.],* 271 App. Div. 839; *Alpert* v. *Admiration Knitwear Co.,* 304 N. Y. 1; *Matter of Wenger* v. *Propper Silk Hosiery Mills,* 239 N. Y. 199; *Gearns* v. *Commercial Cable Co.,* 293 N. Y. 105; *Hodkinson* v. *Haecker,* 248 N. Y. 480; *Corr* v. *Hoffman,* 256 N. Y. 254.) V. All appellants' cross claims against respondent should be allowed to be proven. VI. Appellants' cross claims allowed by the Appellate Division are not limited by the statute of limitations. (*General Fireproofing Co.* v. *Keepsdry Constr. Co.,* 225 N. Y. 180; *Wilson* v. *Mechanical Orguinette Co.,* 170 N. Y. 542; *Emmerick* v. *City Bank Farmers Trust Co.,* 300 N. Y. 417; *Nasaba Corp.* v. *Harfred Realty Corp.,* 287 N. Y. 290; *Brundige* v. *Bradley,* 294 N. Y.

345; *Title Guar. & Trust Co.* v. *Hicks*, 283 App. Div. 723; *Kelly Asphalt Block Co.* v. *Brooklyn Alcatraz Asphalt Co.*, 190 App. Div. 750, 232 N. Y. 304; *Deeves & Son* v. *Manhattan Life Ins. Co.*, 195 N. Y. 324; *National Cash Register Co.* v. *Joseph*, 299 N. Y. 200.)

*Thomas K. O'Brien* and *Arthur E. Sullivan* for respondent in the above-entitled arbitration proceeding. I. A valid contract requiring arbitration exists between respondent and appellant corporations. (*Rudd* v. *Cornell*, 171 N. Y. 114; *Matter of Compagnie Francaise des Petroles* [*Pantepec Oil Co., C. A.*], 279 App. Div. 851, 305 N. Y. 588.) II. The decree of the Surrogate of Bronx County determining the validity of said contracts of 1942 and 1946 is binding on appellants who requested such determination and appellants are estopped from relitigating said issues. (*Rapid Tr. Subway Constr. Co.* v. *City of New York*, 259 N. Y. 472; *Blaustein* v. *Pan Amer. Petroleum & Transport Corp.*, 293 N. Y. 281; *Isaac* v. *Marcus*, 258 N. Y. 257; *McNamara* v. *Powell*, 256 App. Div. 554.) III. Respondent's claims against appellant corporations are substantial and meritorious. IV. Appellants' cross claims are subject to the six-year statute of limitations and cross claim No. 6 is an invention of appellants' advocate. (*Matter of Shea*, 282 App. Div. 1013.)

FULD, J. Although these two appeals were argued at different times, we believe that clarity is promoted by treating them both in one opinion. They revolve about an extended controversy between the heirs of the estate of Maurice A. Shea and the executors and trustees of that estate, Edmund C. Grainger and Edward C. Raftery. In *Matter of Shea*, the heirs appeal from the Appellate Division's affirmance of a decree of the Surrogate of Bronx County judicially settling the final account of the executors and trustees. *Matter of Grainger* (*Shea Enterprises*) is an appeal by two corporations, wholly owned by the estate, from an order granting an application brought by Grainger to compel arbitration of certain disputes which have arisen between him and the corporations; a cross claim asserted by the corporations against Grainger is also involved.

M. A. Shea was the owner of a large chain of motion picture theatres in the eastern United States. He conducted the

business through Shea Enterprises, Inc., a wholly owned corporation, and various subsidiary corporations. In 1936, Shea entered into a contract with Edmund Grainger, a man of high repute and considerable experience in the theatre management field, employing him as general manager of all the theatres. The agreement, calling for the payment to Grainger of a weekly salary and a bonus, specifically recited that, " if any dispute of any kind or character arises between the parties as to any matter contained in this agreement, then such dispute shall be referred to arbitration ". Originally to terminate in 1946, the contract was extended, by a 1939 agreement, to run until December 31, 1951.

In 1940, M. A. Shea died. The will named his widow, his children and a son-in-law (coincidentally, also a Shea, named Gerald) as sole beneficiaries of his estate. It provided for a ten-year testamentary trust; during the existence of the trust, the income from the business was to be paid to the beneficiaries, and, on its termination, the ownership of the corporations was to be turned over to them. Grainger, Edward C. Raftery and one Dennis F. O'Brien (since deceased), all close friends of Shea, were named as executors and trustees. Pursuant to the decedent's wishes as expressed in the will, they elected themselves directors of the various corporations, and Grainger was made president of Shea Enterprises. In addition, as indicated, Grainger was employed as general manager of the business, and his voice was the leading one in guiding its affairs.

In 1942, as the result of a corporate reorganization effected to achieve certain tax benefits, control of the corporations was shifted from Shea Enterprises to Jamestown Amusement Corporation and, as part of the operation, Enterprises transferred and assigned to Jamestown all its right, title and interest in the 1936 employment contract, as amended in 1939, between Grainger and M. A. Shea. In June, 1946, a fourth contract was made, between Grainger and both corporations, extending his employment as general manager from December 31, 1951, to December 31, 1956, and stipulating that " Except as expressly provided by this agreement the previous agreements shall remain in full force and effect." The 1946 contract was expressly approved and ratified in writing by all the Shea heirs except William Shea, an incompetent.

The business prospered. In the ten-year period covered by the trust, from 1940 to 1950, its net worth rose from about $1,000,000 to over $3,000,000, and dividends of $1,200,000 were paid to the Shea beneficiaries.

In 1949, Grainger and Raftery, the surviving executor-trustees, filed their intermediate account, covering the period from decedent's death to September, 1949. The beneficiaries made no objections to the account, and it was judicially settled by the Surrogate as filed.

As the term of the trust drew to a close, a difference of opinion arose between Grainger and Gerald Shea, as spokesman for the heirs, concerning the proper method of computing the former's bonus under his employment contracts. In December, 1951, Grainger requested that the matter be submitted to arbitration. The response of the heirs was immediate and dramatic. They discharged him as general manager of the business and instituted a proceeding in the Surrogate's Court in which they charged him and his fellow executor and trustee with fraud and misconduct and sought to have their previously approved intermediate account vacated. They also requested the Surrogate to declare fraudulent and void the 1942 and 1946 contracts adopting and extending Grainger's employment as general manager until 1956. Since Grainger's right to arbitrate depended upon the validity of these contracts, the corporations, opposing arbitration, procured a stay of the Supreme Court proceeding to compel arbitration, pending the Surrogate's determination of that issue.

The Surrogate referred the vacatur proceeding to a Referee to hear and report. After 68 days of hearings, in which a 13-volume record was compiled, the Referee dismissed all of the heirs' objections and sustained the validity of the Grainger employment contracts. He found the administration of the estate and the business to be " without a trace of fraud or constructive fraud by the executors. Rather it is one marked by care and prudence and crowned with exceptional success." The Surrogate confirmed the Referee's report in all respects, the Appellate Division unanimously affirmed (282 App. Div. 1013), and this court dismissed a motion for leave to appeal on the ground that the order involved was nonfinal (307 N. Y. 676).

After the vacatur proceeding had thus come to an end, Grainger reopened the Supreme Court proceeding against the corporations to compel arbitration. He sought arbitration concerning not only the computation of his bonus but also the propriety of his discharge. The corporations, in continued opposition to the application, sought to relitigate the question of validity of the employment contracts, contending that the decree of the Surrogate against the heirs as individuals was not binding on their wholly owned corporations. The court at Special Term held that the doctrine of *res judicata* applied to estop them from retrying that issue and ordered that arbitration proceed; as indicated, the Appellate Division affirmed and the corporations' appeal from that decision is one of the cases before us.

In the meantime, in January, 1952, Grainger and Raftery had filed their final account. Appellants again objected, charging numerous acts of misconduct and self-dealing, many identical with those charged in the vacatur proceeding. The Surrogate dismissed all the objections — finding it " regrettable " that the Shea heirs had " been led to make such unwarranted and unjustified accusations against these executors and trustees " — and settled the final account as filed. The appeal of the heirs from the Appellate Division's affirmance of that decree is the other case before us.

As to that appeal, little is to be gained by detailed treatment of each of the accusations of fraud and misconduct leveled at respondents Grainger and Raftery. It is enough to say that, as to the objections relating to transactions occurring before September, 1949, they were thoroughly litigated in the vacatur proceeding and decided against the heirs and that, as to the other objections, the record furnishes ample support for the findings made by the Surrogate, and affirmed by the Appellate Division, that the charges were unwarranted and unjustified. The additional contentions — among them, that the Surrogate erroneously sanctioned " paying out " commissions to Grainger and Raftery and impermissibly awarded counsel fees to their attorneys — have also been considered and found to be not tenable.

The appeal in the proceeding to compel arbitration requires more extended discussion.

There can be no doubt that the employment contracts (the issue of their validity aside) entitle respondent Grainger to

arbitration of the disputes concerning the computation of his bonus and his premature discharge. Paragraph 22 of the contract of February, 1936, which remained '' in full force and effect '' by reason of the June, 1946, agreement, requires arbitration of '' any dispute of any kind or character '' that arises between the parties '' as to any matter contained in '' the agreement. The claims obviously come within these terms. The agreements expressly describe the method for computing Grainger's bonus and provide that his term of employment shall run until 1956. The appellant corporations contend, however, that the 1942 and 1946 contracts, adopting and extending the previous ones, are invalid, and that arbitration may not be directed until the issue of their validity is tried and determined by the Supreme Court. As to that, respondent maintains that a trial of that issue has already been held and that appellants are bound by the decree rendered against the Shea heirs in the vacatur proceeding.

The general doctrine of *res judicata* gives binding effect to the judgment of a court of competent jurisdiction and prevents the parties to an action, and those in privity with them, from subsequently relitigating any questions that were necessarily decided therein. (See *Matter of New York State Labor Relations Bd.* v. *Holland Laundry,* 294 N. Y. 480, 493; *Elder* v. *New York & Pennsylvania Motor Express,* 284 N. Y. 350; *Good Health Dairy Products Corp.* v. *Emery,* 275 N. Y. 14, 17; *Sears Roebuck & Co.* v. *9 Ave.-31 St. Corp.,* 274 N. Y. 388, 400.) '' ' Sound public policy ' '', this court has written, '' ' requires that different judicial decisions shall not be made on the same state of facts, and that a judgment rendered jurisdictionally and unimpeached for fraud shall be conclusive, as to the questions litigated and decided, *upon the parties thereto and their privies,* whom the judgment, when used as evidence, relieves from the burden of otherwise proving, and bars from disproving, the facts therein determined.' '' (*Matter of New York State Labor Relations Bd.* v. *Holland Laundry, supra,* 294 N. Y. 480, 493.)

In the case before us, it is indisputable that, if the appellant corporations themselves, rather than the individuals who own all of their stock, had been parties to the vacatur proceeding, they would be bound by the Surrogate's decree sustaining the

validity of the employment contracts. The issue was fully and completely litigated and was necessary to the decision; the Surrogate actually denied the specific request of the heirs for a declaration of invalidity. The only question presented, therefore, is whether appellant corporations are in privity with the Shea heirs, who own all of their stock, so that the decision against the heirs is binding upon the corporations. In our judgment, the lower courts properly held that they are.

" Privity " is usually defined as " mutual or successive relationships to the same rights of property." (*Haverhill* v. *International Ry. Co.,* 217 App. Div. 521, 522, affd. 244 N. Y. 582; *Litchfield* v. *Goodnow,* 123 U. S. 549, 551.) " The ground * * * upon which persons standing in this relation to the litigating party are bound by the proceedings to which he was a party is, that they are identified with him in interest ". (*Litchfield* v. *Goodnow, supra,* 123 U. S. 549, 551.) A clearer case for application of the doctrine could hardly be imagined than one involving successive attempts to litigate the same question by a corporation and by its owner or owners. Such attempts have been barred on principles of *res judicata* or collateral estoppel where all of the corporation's stock was owned by one person (see *McNamara* v. *Powell,* 256 App. Div. 554, 558; *United States Envelope Co.* v. *Transo Paper Co.,* 221 F. 79, 80; cf. *Warford Corp.* v. *Bryan Screw Mach. Products Co.,* 44 F. 2d 713); the owner, it has been said, " will not be permitted to use the corporate cloak as a means to avoid the finality of the former adjudication to which he was a party." (*McNamara* v. *Powell, supra,* 256 App. Div. 554, 558.) Manifestly, the situation is no different where all of the stockholders of a family corporation, rather than an individual who owns the entire corporation, have appeared and participated in the prior action which resulted in an unfavorable adjudication.

The interests of the heirs in the Surrogate's Court proceeding and the appellant corporations in this case are identical. Both have sought to invalidate the 1942 and 1946 contracts because of alleged fraud and self-dealing by respondent and the other executor-trustees with the properties of the Shea estate. It was the heirs, the actual and benefical owners of appellants, who alone stood to lose or gain by the outcome in each case; for all

practical purposes, the corporation was the heirs, the heirs, the corporation. If there had been any doubt as to their being represented, their position posited and their interests protected in the Surrogate's Court, the corporations would not have sought to stay the Supreme Court proceeding in 1951 nor requested that the issue of the contracts' validity be determined in the vacatur proceeding. By adopting that course of action, they elected to have that question decided by the Surrogate rather than the Supreme Court, and this circumstance alone is enough to estop them from now attempting to avoid the binding force of the Surrogate's decree. There would have been no purpose in deferring the Supreme Court hearing until the Surrogate had decided the issue of validity, unless his finding was to be decisive in both proceedings.

As earlier indicated, appellants made a cross motion, requesting the submission to the arbitrators of seven so-called cross claims, in the event that arbitration was directed. The court at Special Term ordered the submission of one of them, upon respondent's consent, and denied the other six; the Appellate Division, however, modified, by directing the submission of five of the six remaining cross claims. Appellants contend that the Appellate Division should also have submitted the remaining cross claim, that numbered (6) in their affidavit, which asserts that " Grainger is liable to Shea Enterprises, Inc. for a sum approximating $100,000 in the matter of the calculation of his bonus," because of corporate moneys " which he expended, and for which he allowed no return to the Shea companies."

There is no reason to treat this cross claim differently from the others. Whether or no it has merit is not a matter for the courts. Although the claim is described with less than exemplary clarity or specificity, it directly relates to the computation of respondent's bonus and is, therefore, a dispute arising under the employment contracts. Those contracts require arbitration of " any dispute of any kind or character   *   *   * as to any matter contained in " them. Under such a broad clause, appellants are entitled to have any counterclaims or setoffs that they may have against Grainger arising out of the employment contracts submitted to the arbitrators. (Cf. *Matter of Stone [Freezer]*, 304 N. Y. 649, affg. 280 App. Div. 103;

*Fudickar* v. *Guardian Mut. Life Ins. Co.*, 62 N. Y. 392, 403–404; *Matter of Priore [Schermerhorn]*, 204 App. Div. 332, affd. on other grounds 237 N. Y. 16; see, also, Sturges on Commercial Arbitrations and Awards [1930], § 75, p. 236.)

Appellants raise one further point. They contend that the Appellate Division improperly directed the arbitrators to apply the six-year statute of limitations to their cross claims, for the reason that the application of the statute of limitations, like other questions of law, is a matter that should be left exclusively to the arbitrators. (Cf. *Application of Reconstruction Finance Corp.*, 106 F. Supp. 358 [S. D. N. Y.]; Sturges, *op. cit.*, § 218, p. 502.) It is not, however, necessary here to consider or pass upon the question. The record reveals that appellants themselves insisted that the statute of limitations be applied to measure and limit the claims asserted against them by respondent Grainger, and the court at Special Term adopted their position. In view of that, they may not be permitted to have the arbitrators decide their own cross claims without regard to that restriction. Whatever, therefore, may be the rule in another case, even-handed justice and principles of common fairness require that we uphold the Appellate Division in ordering that the cross claims also be measured by the statute of limitations.

It follows that the Appellate Division order should be affirmed, except insofar as it denied appellants' request to submit the sixth cross claim. However, in combining and rephrasing the other two cross claims that concern the computation of bonus, one of which covers a period solely from 1941 to 1945, the Appellate Division submitted the latter claim and confined both to that period (Third Decretal Paragraph, item [c]).[1] While this may have been inadvertent, it does patently conflict with that portion of the order limiting all of the cross claims to the six-year statute of limitations, which would bar any claims arising prior to 1948. Consequently, the Third Decretal Paragraph must be modified to make it clear that the arbitrators may

---

1. This portion of the order reads as follows: "the arbitrators herein shall consider and pass upon the matters and issues set forth below * * *: (c) the computation of bonus paid to petitioner between the years 1941 and 1945, both inclusive, including but not limited to the participation by petitioner in capital gains realized and his nonparticipation in capital losses sustained".

consider all matters affecting the computation of the bonus, including appellants' sixth cross claim, subject only to the six-year time limitation which, according to the Final Decretal Paragraph, must govern all the cross claims.

In the proceeding in the Surrogate's Court, the order of the Appellate Division should be affirmed, with costs to all parties appearing and filing briefs herein, payable out of the estate.

In the arbitration proceeding, the order of the Appellate Division should be modified to substitute for item (c) in its Third Decretal Paragraph the following:

> " (c) the computation of bonus paid to petitioner, including but not limited to (1) the participation by petitioner in capital gains realized and his nonparticipation in capital losses sustained and (2) the expenditure by petitioner of corporate moneys without allowing any return to the corporations,"

and, as so modified, affirmed, without costs.

In *Matter of Shea:* CONWAY, Ch. J., DESMOND, FROESSEL, VAN VOORHIS and BURKE, JJ., concur; DYE, J., taking no part.

Order affirmed, with costs to all parties appearing separately and filing separate briefs payable out of the estate.

In *Matter of Grainger (Shea Enterprises)*: CONWAY, Ch. J., DESMOND, FROESSEL, VAN VOORHIS and BURKE, JJ., concur; DYE, J., taking no part.

Order of Appellate Division modified in accordance with the opinion herein and, as so modified, affirmed, without costs.