Froessel, J.
 

 On June 28, 1956 respondent contractor, a domestic corporation (hereinafter called Ehrlich), entered into a written contract with appellant subcontractor, a domestic corporation (hereinafter called Old Unit Frame), whereby the latter agreed to construct certain concrete structures at a shopping center in Dover, New Jersey. Article XXIV of the contract provided for arbitration by the American Arbitration Association “where a controversy shall arise under this Contract ”, and the parties could not themselves amicably adjust the dispute within five days after either served upon the other a written notice of a desire to arbitrate. The arbitration clause did not apply to matters which the parties agreed would be resolved by the architect, nor to certain specified articles of the contract, including article XI forbidding assignment of the contract, as to which ‘
 
 ‘
 
 the parties shall have their remedies as provided by law ”.
 

 On April 30, 1957, while the construction work was in progress, the directors and stockholders of Old Unit Frame, at a joint meeting, unanimously agreed to change the name of the corporation to Swiss Construction Corporation and then voluntarily dissolve, distribute the assets to the stockholders in kind, and form a new corporation under the original name — Unit Frame & Floor Corporation (hereinafter called New Unit Frame). These resolutions were thereafter carried out, allegedly without the knowledge or consent of Ehrlich, and the assets of the dissolved corporation were distributed to the stockholders “ subject to its liabilities ”. The stockholders, as alleged by Old Unit Frame’s president, who had originally signed the Ehrlich contract, then “ agreed among themselves for the procedure whereby the unperformed portions of Old Unit Frame’s contracts, including specifically the contract with Ehrlich, would be completed ” so as “to fulfill the obligations of Old Unit Frame under its agreements and under Section 29 of the General Corporation Law and Section 105(8) of the Stock Corporation Law ’ ’.
 

 The Ehrlich contract was then completed by the stockholders, the benefit of which Ehrlich received, and on October 23, 1957, after Ehrlich refused to pay the balance due, a written demand
 
 *278
 
 for arbitration was served on Ehrlich and filed with the American Arbitration Association. The demand alleged that Unit Frame & Floor Corporation (subsequently amended to read “ Swiss Construction Corporation, formerly known as Unit Frame and Floor Corporation ”), “a Party to an Arbitration Agreement contained in * * * a written contract, dated June 28, 1956 ”, demanded arbitration of the following dispute:
 
 ‘ ‘
 
 Milton L. Ehrlich, Incorporated, has failed to pay invoices of Unit Frame and Floor Corporation in the total amount of $147,606.35 ” and quoted the arbitration clause of the Ehrlich contract.
 

 After receiving the demand for arbitration, Ehrlich moved to stay the arbitration on the principal ground that arbitration proceedings had been initiated by New Unit Frame, with whom it had no contract. It was perfectly clear, however, that the arbitration was initiated by Old Unit Frame, and the lower courts properly held that the
 
 new
 
 corporate entity was in no way involved. Ehrlich has now abandoned that claim.
 

 Ehrlich’s second claim was that article XI of the contract prohibited Old Unit Frame from delegating performance to anyone without the consent of Ehrlich, and that, by breaching the agreement “on a matter which the Ehrlich contract says is
 
 not
 
 arbitrable ”, Old Unit Frame “forfeited the right to have the performance ” of its
 
 stockholders
 
 adjudicated in arbitration proceedings. In this connection, Ehrlich alleged that, as a result of the negligent performance of the post-dissolution work, it had a claim for the cost of rectifying the improper work and for damages in consequence.
 

 The issue before us is whether the dissolution of Old Unit Frame and the subsequent distribution of its assets to its stockholders “ subject to its liabilities ” precluded the dissolved corporation from invoking the arbitration clause of the Ehrlich contract.
 

 We think it clear, at the outset, that under section 29 of the General Corporation Law, and subdivision 8 of section 105 of the Stock Corporation Law, a dissolved stock corporation may participate in arbitration proceedings as an incident to winding up its affairs and discharging its obligations. The fact that subdivision 8 of section 105 of the Stock Corporation Law was amended, subsequent to the decision of this case by
 
 *279
 
 the courts below, so as
 
 expressly
 
 to provide that a voluntarily dissolved stock corporation may ‘£ participate in arbitration proceedings ’ ’ as well as sue and be sued * * * in its corporate name ’ is no argument to the contrary, as the amendment was merely a recognition of existing law. Since arbitration is but a substitute for the judicial process, with the parties creating their own forum and picking their own judges, a dissolved corporation which, by law, was enabled to sue in its corporate name would likewise be endowed with the capacity to participate in arbitration proceedings. This was recognized in
 
 Matter of Kosoff
 
 (“
 
 Jones
 
 ”) (276 App. Div. 621, 624, affd. 303 N. Y. 663) where a motion to stay arbitration was granted only because the court found that there was no arbitrable dispute, and was explicitly held in
 
 Matter of Delphi Mfg. Co.
 
 v.
 
 Rosenblum
 
 (15 Mise 2d 337, 338-339), where, in denying the right of a dissolved corporation to set up its voluntary dissolution as a bar to arbitration, the court emphasized “ that the Legislature of this State did not intend voluntary dissolutions to be a vehicle for the avoidance of pre-existing contractual obligations and liabilities.” (See, also,
 
 Hudak
 
 v.
 
 Hornell Ind.,
 
 304 N. Y. 207, 213-214.)
 

 Inasmuch as Old Unit Frame could not have pleaded its voluntary dissolution as a bar to arbitration, it likewise follows that it is entitled to the benefits of the arbitration clause, and that Ehrlich may not take advantage of the dissolution to escape the contractual method agreed upon by the parties to settle their disputes. Old Unit Frame continued to exist as a legal entity, after its dissolution, for as long as was necessary to wind up its business affairs and discharge its existing obligations and, as the court said in
 
 Stentor Elec. Mfg. Co.
 
 v.
 
 Klaxon Co.
 
 (115 F. 2d 268, 270, revd. on other grounds 313 U. S. 487) in interpreting the predecessor of subdivision 8 of section 105 of the Stock Corporation Law, ££ That an existing contract is an obligation seems too certain a proposition to require extensive argument or marshalling of authorities to prove it.”
 

 In reversing Special Term and granting the motion to stay arbitration, the Appellate Division did not dispute the proposition that “the corporate entity survives dissolution for the purpose of the collection of assets due to the corporation ’ ’, but did not “ see its applicability here ”, since it was not the
 
 *280
 
 dissolved corporation but its stockholders who completed the contract. The court apparently felt that the distribution of its assets to the stockholders constituted an “ assignment ” in violation of article XI of the contract, and reasoned that “ The demand for arbitration or for payment cannot be made by the corporate entity which no longer has an interest in the contract.” It emphasized the fact that “ The papers ” (apparently the motion papers) did not indicate “ that the collection of any moneys due for work performed under the contract was reserved to the corporation ”, and concluded:
 
 “It must be assumed
 
 therefore that the corporation divested itself of the right to collect such funds by the transfer of the contract.” (Emphasis supplied.)
 

 We think it clear that the distribution of the Ehrlich contract to the stockholders of Old Unit Frame and its subsequent completion by them was merely incident to winding up the business affairs of the dissolved corporation and discharging its existing obligations. The dissolved corporation could not, under the law, transfer or assign its
 
 obligations
 
 under the contract, nor discharge itself from liability for nonperformance, and its stockholders were not only empowered to complete the contract on behalf of the corporation but indeed were duty-bound to do so. There is no evidence of a formal assignment of the contract from the corporation to its stockholders, and even the Appellate Division noted that the transfer of the contract to the stockholders “ Presumably * * # was done pursuant to section 29, which authorizes the directors to distribute the assets remaining after the payment of debts and expenses.”
 

 The decision of the Appellate Division seemed to turn on the fact that Old Unit Frame did not
 
 “
 
 retain ” the contract and complete it in its corporate capacity, but left it to its stockholders to complete. Under the circumstances disclosed by this record, this strikes us as a distinction without a difference, and was obviously of no moment to Ehrlich during the several months in which the construction work was completed. There apparently was no change in personnel or performance after Old Unit Frame dissolved, as Ehrlich stated that it was not aware of any change before service of the demand for arbitration. As the general contractor, Ehrlich presumably exercised the right to “ every reasonable, safe and proper facility for inspecting the work” during its progress and up
 
 *281
 

 to the
 
 date of final completion guaranteed it by article IX of the contract. For “ all practical purposes, the corporation was the [stockholders], the [stockholders] the corporation ”
 
 (Matter of Shea,
 
 309 N. Y. 605, 617-618).
 

 Moreover, subdivision 7 of section 105 of the Stock Corporation Law commands a corporation which voluntarily dissolves without judicial proceedings ‘1 to distribute the remainder of its assets among its stockholders ” “ after paying and adequately providing for the payment of [its] liabilities and obligations ”. There is no evidence that Old Unit Frame was insolvent or had not satisfied any creditors it may have had prior to dissolution. By distributing the Ehrlich contract, which it regarded as an asset, to its stockholders, the very owners of Old Unit Frame
 
 (Matter of Shea, supra,
 
 p. 617), who at the same time agreed upon “ the procedure whereby the unperformed portions of Old Unit Frame’s * * * contract with Ehrlich, would be completed ”, the dissolved corporation adequately provided for the discharge of its existing obligations and thus complied with the statute.
 

 Had the stockholders of Old Unit Frame defaulted on the contract and
 
 not
 
 completed it, it is quite obvious that the corporation could not have set up its dissolution as a bar to arbitration of a claim for damages by Ehrlich, since it continued liable on the contract after dissolution (see General Corporation Law, § 29; Stock Corporation Law, § 105, subd. 8;
 
 Matter of Delphi Mfg. Co.
 
 v.
 
 Rosenblum, supra,
 
 p. 337). Inasmuch as the stockholders completed the contract on behalf of their own corporation, it follows that Ehrlich cannot avoid its contractual obligation to arbitrate by pleading the transfer of Old Unit Frame’s assets to the stockholders following corporate dissolution. Old Unit Frame seeks only to arbitrate the issue of nonpayment and not the legal effect of its dissolution, and it is conceded that this issue is within the compass of the arbitration clause. The fact that Ehrlich alleges a counterclaim for defective performance cannot defeat Old Unit Frame’s right to arbitration, since, as we noted in
 
 Matter óf Lipman (Haeuser Shellac Co.)
 
 (289 N. Y. 76, 80-81):
 
 “
 
 The question of performance goes to the merits, and that, the parties have consented to have decided by the arbitral tribunal.” If the counterclaim is sustained before the arbitrators, it may be offset against Old Unit Frame’s claim.
 

 
 *282
 
 The order of the Appellate Division should be reversed and that of Special Term reinstated, with costs in this court and in the Appellate Division.
 

 Chief Judge Conway and Judges Desmond, Dye, Fuld, Van Voorhis and Burke concur.
 

 Order reversed, etc.