SHIRE REALTY CORP. et al., Respondents, v SEYMOUR SCHORR et al., Appellants.

Second Department, January 17, 1977

*Bernstein & Gallers, P. C. (Richard S. Bernstein* and *Barry A. Wadler* of counsel), for appellants.

*Lindenbaum & Young (Irvin Boyd Green* of counsel), for respondents.

SHAPIRO, J. The defendants appeal from (1) an order of the Supreme Court, Kings County, dated December 2, 1975, which granted the plaintiffs' motion for summary judgment and denied their cross motion for leave to amend their answer and (2) the judgment entered thereon. We affirm.

### THE ISSUES

(1) Are the individual guarantors (the defendants here) bound by the arbitration award which made a determination that their corporate principal had breached its contract with the plaintiffs?

(2) If they are, have they shown the existence of any triable issues which should serve to defeat the plaintiffs' claim against them on their personal guarantees of performance of that contract by their corporation?

### THE FACTS

On February 15, 1968 the plaintiffs, Shire Realty Corp. (Shire) and Leighton Realty Corp. (Leighton), as owners of certain property in Queens County, entered into a standard A.I.A. contract with J. Schorr & Co., Inc., as contractor, for the performance of certain construction work. The contract provided for arbitration of any disputes between the parties by the American Arbitration Association. It also gave the owners (the plaintiffs) the right to require the contractor to furnish a surety company performance bond.

The contractor was unable to secure such a bond and, on May 28, 1968, the defendants, the contractor's sole stockholders and officers, agreed to personally guarantee the contractor's performance of its contract and to increase the withholding of "progress payments".

When difficulties arose during construction in October, 1968, the contractor ceased work. It then instituted an arbitration proceeding against the plaintiffs, who asserted counterclaims against both the contractor and the defendants, as guarantors. The arbitrators awarded the plaintiffs $35,000, plus interest, "in full settlement of all claims and counterclaims submitted", but refused to make any determination as to the liability of

the guarantors (the defendants) because they were not parties to the construction contract. The award was confirmed by an order of Special Term and judgment was entered against the contractor, which is now insolvent.

Thereafter, the plaintiffs commenced this action on the defendants' guarantee of payment and moved for summary judgment. The defendants cross-moved for leave to amend their answer so as to include therein a counterclaim, for their own benefit, for sums allegedly retained by the plaintiffs.*

It is undisputed that the arbitration proceeding, although processed in the name of J. Schorr & Co., Inc., was in fact filed on the corporation's behalf by the defendants who, during the several days of lengthy hearings, all appeared, testified on direct examination and were cross-examined. In addition, the three defendants cross-examined the plaintiffs' witnesses at great length, because, in the arbitration proceeding, the plaintiffs had counterclaimed against the defendants' corporation for its failure to perform under the contract.

### THE CONTENTIONS OF THE PARTIES

The plaintiffs contended that "[s]ince Schorr, Inc. was liable in damages by unanimous award after its full representation, testimony, confrontation of witnesses and cross-examination of witnesses by the three individual guarantors, their liability immediately arose because the corporation whose performance they guaranteed, had failed to perform to the extent awarded against it, and it was insolvent."

The defendants, in their affidavits in opposition to the plaintiffs' motion for summary judgment, contended that "the 'Surety' Agreement does not purport to bind the defendants to the determination of the arbitrators and to the judgment entered thereon", that the original contract entered into between J. Schorr & Co., Inc. and the plaintiffs was altered

---

* In connection with the defendants' cross motion, the plaintiffs properly point out that this court should not take cognizance of the defendants' proposed amended answer (their cross motion for leave to submit such answer was denied by Special Term in the order under review), in view of the fact that it is not a part of the record on appeal.

In addition, the plaintiffs note that, in the defendants' answer they seek to recover, for their *own personal* benefit, the sum of $25,000 (plus interest), which represents the moneys allegedly retained by the plaintiffs from the defunct corporation. This claim reveals how personally involved the defendants were with their personal corporation and further discredits their argument that they should not be bound by the arbitration award against it.

and modified without the consent of the defendants and that the surety agreement was entered into without consideration and as a result of economic duress practiced by the plaintiffs.

The defendants also asserted that they should be entitled to present testimony at a trial to show the circumstances under which the guarantee was executed, noting that the arbitration award stated: "No determination can be made with respect to the liability of Seymour Schorr a/k/a Sy Schorr, Ted Schorr and Harold Schorr * * * due to the fact that the above mentioned are not named Parties to the contract dated February 15, 1968."

The defendants also sought leave to amend their answer to interpose a counterclaim in the amount of $28,485 (plus interest), representing payments ("retainage") which the plaintiffs allegedly withheld from the defunct corporation.

### THE DECISION AT SPECIAL TERM

The Special Term granted the plaintiffs' motion for summary judgment and denied the defendants' cross motion for leave to amend their answer, saying:

"Although the guarantors may not meet the textbook definition of privies, the court considers that:

"1. the fact that the contractor was a close corporation and the guarantors were the sole stockholders and principals thereof;

"2. their guaranty of performance of a contract which required arbitration of all disputes;

"3. their initiation and prosecution of the arbitration including testifying on direct and cross-examination and cross-examining the creditors;

"4. the attempt to bring them in by way of counterclaim, and

"5. their prosecution of the arbitration both for their own benefit and the benefit of their corporation (the conduct of which, they at all times, controlled), all taken together constitute sufficient participation in the prior proceeding to entitle them to be bound thereby."

### THE LAW

A guarantee is an agreement to pay a debt owed by another which creates a secondary liability and thus is collateral to

the contractual obligation. The principal debtor is not a party to the guarantee and the guarantor is not a party to the principal obligation (57 NY Jur, Suretyship and Guaranty, § 15).

"Where the parties to the principal contract agree therein that certain questions arising thereunder which affect the liability of the principal obligor are to be determined by the award of arbitrators appointed in a specified manner, an arbitration award made pursuant thereto is as conclusive on a surety for the performance of the contract as is a judgment in a case where the surety makes his liability depend upon the result of a litigation between the parties" (57 NY Jur, Suretyship and Guaranty, § 289).

Thus, in *Binsse v Wood* (37 NY 526), in which the contract required that arbitrators fix the date upon which rent was to commence, the guarantor contended that he was not bound by the award since he had no notice of the proceeding or of the award and took no part in the arbitration proceeding. The court, in noting that the guarantor stood in his principal's shoes, held that the guarantor was bound by the arbitration award. In so holding the court did state, however (p 531), that although the award was binding upon the guarantor, he was nevertheless "at liberty to show fraud, collusion, and perhaps, that there was a good defense which the party neglected to interpose."

In the leading case of *Matter of Shea* (309 NY 605), the Surrogate dismissed the heirs' objections to an intermediate account in the decedent's estate, filed by the respondent fiduciary, a manager in decedent's theatre business, and a cofiduciary. The Surrogate also sustained the validity of the manager's employment contract. Thereafter, the manager commenced an action in the Supreme Court against the corporations and sought to compel arbitration as to the computation of his bonus and the propriety of his discharge. The court held that the corporations were estopped by the earlier proceeding from relitigating the validity of the manager's employment contract.

The following language by the court is instructive (309 NY, at p 617): " 'Privity' is usually defined as 'mutual or successive relationships to the same rights of property.' *(Haverhill v. International Ry. Co.,* 217 App. Div. 521, 522, affd. 244 N.Y. 582; *Litchfield v. Goodnow,* 123 U.S. 549, 551.) 'The ground * * * upon which persons standing in this relation to the

litigating party are bound by the proceedings to which he was a party is, that they are identified with him in interest'. *(Litchfield v. Goodnow, supra,* 123 U.S. 549, 551.) *A clearer case for application of the doctrine could hardly be imagined than one involving successive attempts to litigate the same question by a corporation and by its owner or owners.* Such attempts have been barred on principles of *res judicata* or collateral estoppel where all of the corporation's stock was owned by one person (see *McNamara v. Powell,* 256 App. Div. 554, 558; *United States Envelope Co. v. Transo Paper Co.,* 221 F. 79, 80; cf. *Warford Corp. v. Bryan Screw Mach. Products Co.,* 44 F. 2d 713); the owner,it has been said, 'will not be permitted to use the corporate cloak as a means to avoid the finality of the former adjudication to which he was a party.' *(McNamara v. Powell, supra,* 256 App. Div. 554, 558.) *Manifestly, the situation is no different where all of the stockholders of a family corporation, rather than an individual who owns the entire corporation, have appeared and participated in the prior action which resulted in an unfavorable adjudication"* (emphasis supplied).

In *Lesser v Migden* (328 F2d 47), the bankrupt was the president and sole stockholder of the corporation. When the corporation issued a series of promissory notes to Lesser, the bankrupt signed the notes, on their face, as president, and personally indorsed them on the back, prior to delivery. Upon delivery, Lesser indorsed the notes and assigned them to a third party. Upon default, the assignee brought an action against the corporation and the bankrupt. The latter was not served and did not appear in his individual capacity, but he did appear as a witness for the corporation and controlled its defense. The complaint was dismissed after a trial. Thereafter, Lesser reacquired the notes and brought suit against the corporation, but the bankrupt was not named as a party. The court held that further litigation on the notes was barred, as *res judicata,* by the determination of the assignee's action.

In *Heller & Co. v Cox* (343 F Supp 519, affd 486 F2d 1398) a creditor brought an action against guarantors of the debtor corporation to recover for deficiencies remaining upon the sale of collateral. The individual guarantor was the principal stockholder, president and director of the debtor, had been an active participant in and had full control of, the debtor's defense in the chapter XI proceeding, and had sought to assert a claim in the chapter XI proceeding against the creditor. The

court held that the guarantor had the necessary privity with the debtor to warrant his being bound by the determination of the referee.

In *Warren v County of Monroe* (51 Misc 2d 292) the principal stockholder of a rival automobile renting corporation brought suit against the county and the lessee corporation for a judgment declaring an airport rental business lease and renewal clause invalid. Judgment was entered in favor of the defendants declaring the lease to be valid. Thereafter, the same individual, and his corporation, brought suit against the defendants for a judgment declaring the renewal clause void. In holding that the judgment declaring the lease to be valid was *res judicata,* the court stated (pp 296-297): "The moving papers show, and it is not controverted, that plaintiff Warren is the sole or major stockholder of plaintiff Rochester Truck Rental, Inc., and therefore, he: 'will not be permitted to use the corporate cloak as a means to avoid the finality of the former adjudication to which he was a party * * * The [plaintiff] * * * corporation must be deemed to have been in privity with [Warren] * * * and, therefore, the decision of the * * * court is binding upon it also'. *(McNamara v. Powell,* 256 App. Div. 554; see, also, *Matter of Shea,* 309 N.Y. 605.)"

*Matter of Hartford Acc. & Ind. Co. (Maryland Cas. Co.)* (75 Misc 2d 410) is not a holding to the contrary, for there the insured was not a party to the agreement to arbitrate and did *not,* by her actions or course of conduct, embrace or adopt the agreement or seek to benefit therefrom; nor did she have an opportunity to litigate the question of liability at the arbitration hearing.

In *Hinchey v Sellers* (7 NY2d 287, 294), the court stated that: "The doctrine of collateral estoppel 'is essentially a rule of justice and fairness', and the essence of the rule is 'that a question once tried out should not be relitigated between the same parties or their privies' *(Commissioners of State Ins. Fund v. Low,* 3 N Y 2d 590, 595)."

In *Schwartz v Public Administrator of County of Bronx* (24 NY2d 65, 71), the court used language particularly appropriate to the situation here when it said: "Although we have not previously said so, it is now evident that New York has adopted the full and fair opportunity test in applying the doctrine of collateral estoppel * * * New York Law has now reached the point where there are but two necessary requirements for the invocation of the doctrine of collateral estoppel.

There must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have been a full and fair opportunity to contest the decision now said to be controlling."

In *Vincent v Thompson* (50 AD2d 211, 221) this court refused to apply the collateral estoppel doctrine because the defendant was entitled to an opportunity to introduce newly discovered evidence clearly relevant to a key issue in the case; but that is not the situation here, for the defendants have not pointed to any " '*significant* new evidence, which would almost certainly change the earlier result' " (emphasis supplied).

In light of the above authorities, the individual guarantors, as the sole stockholders of the defunct family corporation, should be deemed to have been in privity with it. While it is true that they were not, as individuals, parties to the original agreement to arbitrate, they should not be permitted to use the corporate veil to relitigate the issues decided by the arbitrators in a proceeding which they in fact instituted and prosecuted, which determined that their corporation had defaulted in performing its contract with the plaintiffs and which awarded the latter money damages for the breach. They were antagonistic in fact, if not in name.

Having concluded that the question of who breached the contract, as decided by the arbitrators, is binding upon the defendants, we must consider their contention that, in any event, there are triable issues of fact as to whether their guarantee is enforceable against them.

The letter of guarantee, in its entirety, reads:

"May 28, 1968

J. Schorr Co. Inc.
1285 MacDonald Avenue
Brooklyn, New York

Re: 5432-60 Myrtle Avenue
Ridgewood, New York.

Gentlemen:

Due to your inability to deliver a performance and completion bond for the work at the above named premises as called for in your contract, we have agreed to the following changes in the contract:

(1.) The three principals in your corporation shall guarantee the performance of the contract personally.

(2.) The owner shall withhold 30% of the progress payments

in place of the 20% originally agreed upon.

> Very truly yours,
> SHIRE REALTY CORP. &
> LEIGHTON REALTY CORP.

Accepted by

s/ _____

 Sy Schorr

s/ _____

 Ted Schorr

s/ _____

 Harold Schorr"

In order to overcome the effect of the guarantee, the defendants, in their opposition to the plaintiffs' motion, contended that the terms of their principal's obligation under the contract were altered or extended without their knowledge, that their liability as sureties had been discharged, that the suretyship agreement lacked consideration and that they entered into the surety agreement solely as a result of duress practiced upon them by the plaintiffs. However, they utterly failed, other than by conclusory statements, to show any factual basis for their contentions. For instance, with regard to their claim that their corporation's obligation under the contract was altered or extended without their knowledge, they merely say that: "[t]he original contract entered into between J. SCHORR AND CO., INC. and plaintiffs was altered and modified without the consent of the defendants, without the approval of the defendants so that they would as a matter of Law be discharged from their 'surety' obligations."

However, when, where and by what means such alteration or extension took place is not stated. Such bald, conclusory assertions, even if believable, cannot serve to defeat a motion for summary judgment (see *Haig v Channing Co.,* 54 AD2d — [387 NYS 2d 932]). To show that there was factual support for their contentions, it was incumbent upon the defendants to bring before the court proof, in evidentiary form, substantiating their claim (see *Capelin Assoc. v Globe Mfg. Corp.,* 34 NY2d 338, 342). The reason for the absence of any such proof becomes obvious when it is recalled that the only way the contract with their corporation could have been modified would have been with their consent, since they were the only stockholders and officers of the corporation. Under the circumstances it is clear that their claim that they were discharged as sureties lacks any factual basis.

Their claim of lack of consideration for the making of their personal guarantees likewise is not borne out by any evidentiary facts and is wholly without merit. We have here a situation in which their personal corporation concededly was unable to furnish the performance bond required by the contract. The plaintiffs were acting within their rights when they insisted that they would not permit the corporation to proceed with the contract without such a bond unless the defendants personally guaranteed the corporation's performance. The defendants' guarantee of "the performance of the contract personally", because of the corporation's inability "to deliver a performance and completion bond for the work", was thus premised upon ample consideration. That fact likewise negates the defendants' claim that they executed their personal guarantees because of economic duress practiced upon them by the plaintiffs. A contract "is voidable on the ground of duress when it is established that the party making the claim was forced to agree to it by means of a wrongful threat precluding the exercise of his free will" *(Austin Instrument v Loral Corp.,* 29 NY2d 124, 130). There can be no claim here of a "wrongful threat" since the plaintiffs were well within their rights in insisting upon an increase in the withholding of "progress payments" and receiving the defendants' personal guarantees if their corporation could not furnish the surety company performance bond which it had contracted to furnish. Even severe "pressure of financial circumstances" does not, in and of itself, constitute economic duress *(Criterion Holding Co. v Cerussi,* 140 Misc 855, 856). So, too, even the threat of litigation has been held not to constitute economic duress *(Oleet v Pennsylvania Exch. Bank,* 285 App Div 411).

In short, the defendants have failed to show even a shadowy semblance of an issue which would warrant a trial (see *Andre v Pomeroy,* 35 NY2d 361; *DiSabato v Soffes,* 9 AD2d 297).

### CONCLUSION

This is a clear case of individuals who used a corporation as their alter ego and, under the rationale of cases such as *Lesser v Migden* (328 F2d 47, *supra)* and *Matter of Shea* (309 NY 605, *supra),* they should not be able to relitigate issues previously adjudicated for, at least in this instance, the corporation was not an entity distinct from its individual shareholders.

Having initiated, prosecuted and fully participated in the

arbitration proceeding, they should be deemed to have been in privity with their defunct corporation. Since the arbitration award upheld the plaintiffs' contention as to breach of the construction contract, the defendants should be bound thereby and should be liable on their personal guarantees since, as to the latter, they have not shown any triable issues of fact. The order and judgment should therefore be affirmed.

SUOZZI, J. (dissenting). I dissent and vote to (1) modify the order appealed from by denying plaintiffs' motion for summary judgment and (2) reverse the judgment.

I would have no difficulty in holding the defendants personally liable on their guarantee for the full amount awarded by the arbitrators, but only after an appropriate judicial determination has been made, following a full trial, as to the issues of whether the surety agreement was entered into without consideration and whether the surety agreement was a result of economic duress applied by the plaintiffs, as alleged by the defendants in their papers submitted in opposition to the motion for summary judgment.

While the defendants' papers in opposition to the plaintiffs' motion lack some degree of specificity, which may not augur well for their chances of prevailing at a trial, nevertheless, I am of the view that they sufficiently framed issues of fact which should not be determined summarily.

The majority opinion concedes that the defendants, as guarantors, were not parties to the construction contract, entered into between the plaintiffs and the contractor on February 15, 1968, which contained the arbitration provision. The defendants' agreement to personally guarantee the contractor's performance was not made simultaneously with the execution of the construction contract. Rather, it was made pursuant to a letter dated May 28, 1968, more than three months later, and at a time when the work had progressed to a point that the contractor was entitled to certain moneys. During this three-month period, the plaintiffs allowed the contractor to proceed with the work without insisting that it furnish a surety company performance bond. The defendants alleged that, at the conclusion of the three-month period, the plaintiffs withheld the moneys due to the contractor until the defendants agreed to become personal guarantors of the construction contract. These allegations, and the circumstances upon which they are based, raise issues of fact as to the questions of duress and lack of consideration in the making of the surety

agreement. Therefore, the circumstances under which the guarantee was obtained is a proper issue to be determined at a trial.

Notwithstanding this fact, it can be argued, as the majority opinion has done most persuasively, that the defendants were in privity with the contractor by virtue of the fact that they were its sole stockholders and principals, and that they should not be permitted to use the corporate veil to shield themselves from liability under an arbitration award made in a proceeding which they in fact instituted and participated in fully (see *Matter of Shea,* 309 NY 605; *Warren v County of Monroe,* 51 Misc 2d 292; see, also, *Heller & Co. v Cox,* 343 F Supp 519, affd 486 F2d 1398).

Nevertheless, a determination that the defendants herein were in privity with the contractor does not immediately serve to invoke the doctrine of collateral estoppel so as to bar them from a full trial on the issues relating to the validity of the surety agreement. As the Court of Appeals held in *Schwartz v Public Administrator of County of Bronx* (24 NY2d 65, 71, 73):

New York Law has now reached the point where there are but two necessary requirements for the invocation of the doctrine of collateral estoppel. There must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have been a full and fair opportunity to contest the decision now said to be controlling. * * *

"[T]he burden of showing that the issue was identical and necessarily decided rests upon the moving party."

In rendering their determination, the arbitrators stated, in their award: "No determination can be made with respect to the liability of Seymour Schorr a/k/a Sy Schorr, Ted Schorr and Harold Schorr * * * due to the fact that the above mentioned are not named parties to the contract dated February 15, 1968."

Accordingly, it is clear that the arbitrators did not decide or even reach the issues raised by the defendants relating to the validity of the suretyship agreement.

Consequently, the plaintiffs' motion for summary judgment should have been denied.

HOPKINS, Acting P. J., and COHALAN, J., concur with SHAPIRO, J.; SUOZZI, J., dissents and votes to (1) reverse the judgment and (2) modify the order by deleting therefrom the

provision which granted the plaintiffs' motion for summary judgment and substituting therefor a provision denying the said motion, with an opinion.

Order of the Supreme Court, Kings County, dated December 2, 1975, and judgment of the same court, entered December 4, 1975, affirmed, with one bill of $50 costs and disbursements.