AMMCON, INC., Plaintiff,

v.

Jack F. KEMP, Secretary of Housing and
Urban Development, Defendant.

No. CV–91–5062.

United States District Court,
E.D. New York.

July 7, 1993.

Sayward Mazur, Carl A. Haberbusch, Mazur, Carp & Rubin, New York City, for plaintiff.

Stephen J. Riegel, Asst. U.S. Atty., Brooklyn, NY, for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge.

Plaintiff Ammcon, Inc. ("Ammcon") was the general contractor on a housing project located at 224–246 Kingston Avenue, Brooklyn, New York, the David Chavis Apartments, to provide housing for elderly persons. The First Baptist Church of Crown Heights Senior Citizens Housing Development Fund Corporation ("First Baptist"), an assetless, not-for-profit corporation, sponsored that housing project and owned the property upon which it was to be built. Defendant Jack Kemp was formerly the Secretary of Housing and Urban Development ("HUD"),[1] the federal agency which had advanced funds to First Baptist under § 202 of the Housing Act of 1959, 12 U.S.C. § 1701q, to aid in the construction of those apartments. HUD extended a mortgage in the amount of $8,786,000 to First Baptist pursuant to a Building Loan Agreement between First Baptist and HUD, dated December 21, 1981 and a Mortgage, Mortgage Note and Regulatory Agreement, dated December 23, 1981. Exs. J, K, and L to Aff. of Anthony Mazzucca, dated February 14, 1992 ("Mazzucca Aff.").

HUD was integrally involved in the housing project. It required First Baptist and Ammcon to enter written agreements on HUD-approved forms. For example, on December 23, 1981, Ammcon and First Baptist entered into a Construction Contract, FHA Form No. 2442A ("Construction Contract"). That agreement required HUD's prior writ-

---

1. Since Jack Kemp is no longer Secretary of HUD, the Court shall substitute the Secretary of HUD as defendant in the above-captioned case in accordance with Rule 25(d) of the Federal Rules of Civil Procedure. *See, e.g., York Assocs., Inc. v. Secretary of HUD,* 815 F.Supp. 16, 18 n. 1 (D.D.C.1993).

ten approval before any changes in drawings or design specifications (that would increase construction costs) could be implemented. Construction Contract Art. 1(E). Similarly, Ammcon was entitled to obtain payment for each month of work provided it submitted FHA Form No. 2448, a HUD-approved request for payment form. *Id.* Art. 3(B). In addition, HUD was to become First Baptist's attorney-in-fact in the event that the latter did not discharge its contractual obligations to HUD under the Building Agreement. *Id.* Art. 9(D).

The project was completed by March 30, 1983 in accordance with Art. 2(A) of the Construction Contract. Complaint ¶ 5. Thereafter, Ammcon submitted a request for payment in the amount of $404,720. HUD reviewed that request and determined that Ammcon was only entitled to receive $182,-076 at final closing on the property. On January 29, 1986, Ammcon served a demand for arbitration against First Baptist in accordance with the mandatory arbitration provision of the Construction Contract. *See* Construction Contract Art. 1(A) (incorporating Rule 7.9.1 of AIA Document A201). In its demand for arbitration, Ammcon characterized the dispute as "[First Baptist's] failure to pay [Ammcon] for work performed under a written construction contract, for extra and additional work ordered by [First Baptist], and for damages sustained by [Ammcon] due to a suspension of work by [First Baptist]." Consequently, Ammcon sought "a monetary award in the approximate sum of $750,-000.00." Ex. B to Mazzucca Aff. However, HUD was not served with the demand for arbitration.

First Baptist participated in the arbitration proceedings which were held on May 7 and 29, July 1 and 2, November 5, 6 and 18, and December 2, 1986. At that hearing, First Baptist offered documentary evidence, presented the testimony of witnesses, and cross-examined Ammcon's witnesses; thereafter, it submitted post-hearing memoranda. Mazzucca Aff. ¶¶ 10, 11. On or before May 5, 1987, the arbitrators ruled in favor of Ammcon and awarded it $479,932.00 against First Baptist to be reduced by any additional payments made after February 2, 1987. The arbitral award included $309,239.00 representing "Change orders issued by [First Baptist], some of which were approved by [HUD] and others [i.e., change orders] which were unapproved." Ex. D to Mazzucca Aff.

Final closing on the property was held at HUD's office on June 4, 1987. At closing, First Baptist gave Ammcon a $221,425.22 check and a $28,940.78 note ("Note") to be paid from future rents. Ex. F to Mazzucca Aff. Ammcon's principal, Anthony Mazzucca, signed a letter confirming "that at closing today the unpaid items shown as due to [Ammcon] on [First Baptist's] Certificate of Actual Cost are being paid." Ex. F to Mazzucca Aff. Attached to that exhibit is a two-page handwritten note between Ammcon and First Baptist, reserving Ammcon's right to enforce the arbitration award and merely crediting the amounts paid at closing to the balance due under the arbitration award. *See id.* This document was not found in HUD files and HUD personnel have no knowledge of its veracity. *See* Aff. of Edwin Sprenger, dated April 9, 1992, ¶¶ 15–16 ("Sprenger Aff."). Subsequently, Ammcon commenced an Article 75 proceeding in state court to confirm the arbitral award. Only First Baptist was served in that action; HUD was not notified of the confirmation proceeding. In March 1988, the state court entered a judgment in the amount of $384,-192.65 because First Baptist did not oppose the confirmation of the arbitral award. When HUD declined to pay that amount to Ammcon, Ammcon commenced this action on December 23, 1991, to enforce the judicial confirmation of the arbitral award against HUD as the *alter ego* of First Baptist, as well as to recover the amount of the Note.

Ammcon moves for summary judgment on the ground that the Article 75 proceeding confirms the amount of damages for which HUD is liable as a matter of law because HUD is precluded from relitigating the validity of that award. HUD cross-moves for summary judgment on the grounds that: (1) the action is time-barred; (2) that certain construction cost increases were improvi-

dently granted by the arbitrators; and (3) sovereign immunity. For the following reasons, Ammcon's motion is denied and HUD's cross-motion is denied.

## DISCUSSION

This action is the "identical twin" of an earlier action before this Court, *C.H. Sanders v. BHAP Housing Dev. Fund Co.*, 750 F.Supp. 67. In that case, as in this case, a contractor sued HUD to recover monies due for work performed on an elderly housing project based on an arbitration award which ordered the non-profit corporate sponsor of the housing project to pay a sum certain to the contractor. The Court of Appeals determined that this Court had subject matter jurisdiction over that controversy because the gist of the contractor's claim was predicated on unjust enrichment and on HUD's failure to discharge its duties under 12 U.S.C. § 1701q. *C.H. Sanders v. BHAP Housing Dev. Fund Co.*, 903 F.2d 114, 118 (2d Cir.1990). In addition, the court noted that the plaintiff's recovery, if any, would be limited to funds within HUD's control; that is, the plaintiff in *Sanders* could not otherwise recover funds from the United States Treasury. *Id.* at 120. The court also affirmed that part of this Court's decision, holding that HUD was precluded from relitigating the arbitration award either on the ground that the asset-less, non-profit corporate sponsor was HUD's alter ego or because HUD declined to participate in the arbitration proceeding despite being invited to do so. *Id.* at 121.

In this action, the players have different names but assume nearly identical roles.[2] Accordingly, *Sanders* is instructive in the resolution of this case and is binding insofar as it holds that this Court has subject matter jurisdiction over this action and that HUD is not immune from suit. The government, however, in opposing Ammcon's summary judgment motion and in support of its cross-motion for summary judgment, raises additional arguments in this case that were not addressed in *Sanders*. This Court will address these contentions in turn.

### A. Summary Judgment Standard

Summary judgment "shall be rendered forthwith if ... there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In opposing a properly supported summary judgment motion, "an adverse party may not rest upon the mere allegations or denials of [its] pleading, but [its] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The nonmovant, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In deciding a summary judgment motion, the court need not resolve disputed issues of fact, but need only determine whether there is any genuine issue to be tried. *Eastman Mach. Co., Inc. v. United States*, 841 F.2d 469, 473 (2d Cir.1988). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant such that a jury could return a verdict in its favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), and "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge, whe[n] .... ruling on a motion for summary judgment...." *Id.* at 255, 106 S.Ct. at 2513.

**2.** In fact, in a letter dated December 23, 1991, counsel for Ammcon requested that the Clerk of the Court assign this case to this Court under Rule 50.3 of the Guidelines for the Division of Business Among District Judges because this case is "related" to *Sanders*. Thereafter, the government moved to have this case randomly assigned by the Clerk of the Court because this Court's consideration of this action would not effect a "substantial saving of judicial resources." While it appears that plaintiff may have been overzealous in filing this case as related to *Sanders*, it would certainly be a waste of judicial resources to have this action re-assigned to another judge in this district when this Court has already considered the parties' submissions and is ready to rule on their cross-motions for summary judgment.

## B. Statute of Limitations

The government argues that this action, commenced on December 23, 1991 is time-barred. In the complaint, Ammcon seeks to enforce a state court judgment against HUD for monies due under the construction contract between Ammcon and First Baptist, an asset-less, non-profit shell corporation that is HUD's "alter ego" under a long line of precedent in this Circuit. *See, e.g., C.H. Sanders Co. v. BHAP Housing Dev. Fund Co.,* 903 F.2d 114, 118, 120–21 (2d Cir.1990); *S.S. Silberblatt, Inc. v. East Harlem Pilot Block,* 608 F.2d 28, 41–42 (2d Cir.1979); *Trans–Bay Engineers & Builders, Inc. v. Hills,* 551 F.2d 370, 381–82 (D.C.Cir.1976); *F.W. Eversley & Co. v. East New York Non–Profit HFDC, Inc.,* 409 F.Supp. 791, 796–97 (S.D.N.Y.1976). Those cases establish that HUD is liable for the debts of the non-profit sponsor under an unjust enrichment theory, *i.e.,* HUD would be unjustly enriched were it to obtain the benefits of public housing without the attendant construction costs. Consequently, the government argues that because an unjust enrichment claim accrues once the goods or services are supplied, *see F.W. Eversley,* 409 F.Supp. at 800, Ammcon must have commenced this action within six years of March 30, 1983—when construction of the housing project was completed—or be barred from commencing this action.

■ In support of its contention that Ammcon's claim is subject to a six-year statute of limitations, the government points to section 2401 of Title 28 of the United States Code which provides, in relevant part, that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). This limitations period applies to legal as well as equitable causes of action. *Sisseton–Wahpeton Sioux Tribe v. United States,* 895 F.2d 588, 592 (9th Cir.) (applying § 2401 to bar equitable claims for relief), *cert. denied,* 498 U.S. 824, 111 S.Ct. 75, 112 L.Ed.2d 48 (1990); *Christensen v. United States,* 755 F.2d 705, 707 (9th Cir.1985) (six-year limitations period of § 2401 applies to legal and equitable causes of action), *cert. denied,* 476 U.S. 1181, 106 S.Ct. 2914, 91 L.Ed.2d 543 (1986).

However, that section is inapposite because Ammcon's claim is not against the United States; it is an action solely against HUD, a federal agency. In *Sanders,* as stated above, the court upheld a contractor's cause of action against HUD to enforce an arbitration award which the contractor had obtained against a not-for-profit corporate shell that was HUD's alter ego. The court held that the district court had subject matter jurisdiction over the action and that Congress had waived HUD's sovereign immunity, but only to the extent that the contractor could recover funds within HUD's control that were not in the United States Treasury. *Sanders,* 903 F.2d at 120 (citing *F.H.A. v. Burr,* 309 U.S. 242, 250–51, 60 S.Ct. 488, 493, 84 L.Ed. 724 (1940); *See also C.H. Sanders Co. v. BHAP Housing Dev. Fund Co.,* 910 F.2d 33, 33 (2d Cir.1990) (noting upon petition for rehearing that "[t]he Secretary [of HUD] will be obliged to satisfy the judgment only out of non-Treasury funds that are available to him, if any. If no such funds are available, the Secretary will have no payment obligation"). *See also Lattimore v. Northwest Co-op Homes Ass'n,* No. CV–90–0049, 1992 WL 118383, at *6 & n. 9 (D.D.C. May 19, 1992) (limiting plaintiff's recovery to funds within HUD's control that are severable from general funds in the United States Treasury).[3] The cases are legion that an action is characterized as a suit against the federal agency—not as against the United States—when recovery is limited to funds within the control of the agency. *See, e.g., FHM Constructors v. Village of Canton Housing Auth.,* 779 F.Supp. 677, 681 (N.D.N.Y.1992) (action against HUD in which plaintiff's recovery is limited to funds within that agency's control is not action against the United States); *Jackson Square Assocs. v. United States Dep't of HUD,* 797 F.Supp. 242, 245–46 (W.D.N.Y.1992) (same

---

**3.** Because Ammcon's recovery in this action will likewise be limited to funds within HUD's control, the government's argument that sovereign immunity precludes Ammcon's claim is meritless in light of *Sanders,* 903 F.2d at 120 and *Burr,* 309 U.S. at 250–51, 60 S.Ct. at 493. *See* Def.'s Mem. of Law in Opp'n at 32–35; Pl.'s Reply Mem. in Supp. at 32–33.

with respect to HUD); *Ensign Financial Corp. v. FDIC,* 785 F.Supp. 391, 400–01 (S.D.N.Y.1992) (same with respect to FDIC); *see also Far West Federal Bank v. Director, Office of Thrift Supervision,* 930 F.2d 883, 892 (Fed.Cir.1991) (same with respect to FDIC); *York Assocs., Inc. v. Secretary of HUD,* 815 F.Supp. 16, 21–22 (D.D.C.1993) (same with respect to HUD). *But see Ippolito–Lutz, Inc. v. Harris,* 473 F.Supp. 255, 260 (S.D.N.Y.1979) (applying § 2401 limitations period with respect to actions against the United States to bar action against HUD); *Portsmouth Redevelopment & Housing Auth.,* 706 F.2d 471, 473–74 (4th Cir.1983) (action against HUD is action against the United States even if recovery is limited to funds within HUD's control because those funds are derived from United States Treasury), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).[4] Accordingly, since this action is not against the United States, section 2401(a) is inapplicable.

▮ Alternatively, the government contends that, in the absence of a governing statute of limitations, this Court must apply the analogous state statute of limitations period for an unjust enrichment claim, *Board of Regents v. Tomanio,* 446 U.S. 478, 483–84, 100 S.Ct. 1790, 1795, 64 L.Ed.2d 440 (1980), which is the residual six-year limitations period under N.Y.Civ.Prac.L. & R. § 213(1) (McKinney 1990). *See, e.g., Natimir Restaurant Supply Ltd. v. London 62 Co.,* 140 A.D.2d 261, 261, 528 N.Y.S.2d 564, 565 (1st Dep't 1988); *Baratta v. Kozlowski,* 94 A.D.2d 454, 464, 464 N.Y.S.2d 803, 809 (2d Dep't 1983); *see also Equitable Life Assurance Society v. Branch,* 32 A.D.2d 959, 960, 302 N.Y.S.2d 958, 960 (2d Dep't 1969) (applying six-year limitations period for cause of action in implied contract under N.Y.Civ.Prac.L. & R. § 213(2) to unjust enrichment claim).

However, this argument is flawed because Ammcon is not pursuing an unjust enrichment claim in this case. Ammcon seeks to enforce the judicial confirmation of an arbitral award—which it obtained against First Baptist in state court—against HUD on the theory that First Baptist is HUD's alter ego. When a plaintiff seeks to pierce the corporate veil to enforce a money judgment that was previously entered against the alter ego of a defendant, the applicable limitations period is twenty-years commencing from the date of the judgment under N.Y.Civ.Prac.L. & R. § 211(b) (McKinney 1990). *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 608 F.Supp. 1261, 1264 (S.D.N.Y.1985), *rearg. denied,* 611 F.Supp. 281 (S.D.N.Y.1985), *aff'd in relevant part and rev'd in part,* 933 F.2d 131, 142–43 (2d Cir.1991). The reference to "unjust enrichment" in *Sanders* was simply to allow the contractor to pierce the corporate veil and to confer subject matter jurisdiction in the district court to enforce an arbitration award against HUD. *See Sanders,* 903 F.2d at 117, 118, 121. Accordingly, the government's statute of limitations defense must be rejected as a matter of law.[5]

---

**4.** The government cites *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963), for the proposition that an action against a federal officer in his official capacity is an action against the United States if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration...." *See also Falls Riverway Realty, Inc. v. City of Niagara Falls, New York,* 754 F.2d 49, 52 n. 1 (2d Cir.1985). Thus, the government argues that this action represents an action against the United States because it would require HUD, a federal agency with limited funds, to remit monies within its control to Ammcon and, therefore, section 2401(a) should apply. However, *Dugan* is irrelevant to this action because there is an independent waiver of sovereign immunity with respect to HUD, *see Far West,* 930 F.2d at 892, and because Ammcon's recovery is limited exclusively to funds within HUD's control in light of *Sanders,* 903 F.2d at

120. *See also Falls Riverway,* 754 F.2d at 52 n. 1 (action against Secretary is action against HUD). *But cf. Ballenger v. Marsh,* 708 F.2d 349, 350 (8th Cir.1983) (section 2401(a) limitations period barred dishonorably discharged veteran's suit against the Secretary of the Navy); *Roberts v. Clark,* 615 F.Supp. 1554, 1556 (D.Colo.1985) (section 2401(a) barred suit brought against Secretary of the Interior for invalidating plaintiffs' unpatented mining claims); *June v. Secretary of the Navy,* 557 F.Supp. 144, 146–47 (M.D.Pa. 1982) (section 2401(a) barred enlisted man's challenge to his discharge from the navy based on his homosexuality).

**5.** Similarly, this Court rejects the government's alternative contention that the equitable doctrine of laches bars Ammcon's cause of action. Since Ammcon has a legal claim to enforce a money judgment, the doctrine of laches is irrelevant.

## C. HUD's Motion for Partial Summary Judgment

The government contends that it is entitled to partial summary judgment to the extent that the arbitrators awarded damages to Ammcon for increases in construction costs based on change orders that were not pre-approved by HUD. The government points to Article 1(E) of the Construction Contract between Ammcon and First Baptist, which provides that:

> Changes in the Drawings and Specifications or any terms of the [Construction] Contract Documents, or orders for extra work, or changes by altering or adding to the work, which will result in any net construction cost increase, or will change the design concept, or which will result in a net cumulative construction cost decrease of more than 2% of the contract amount may be effected only with the prior written approval of HUD under such conditions as HUD may establish.

Consequently, the government argues that the arbitrators exceeded their authority in awarding $309,239.00 for "Change orders issued by [First Baptist], some of which were approved by [HUD] and others [i.e., change orders] which were unapproved." Ex. D to Mazzucca Aff.

■ However, this argument does not entitle HUD to partial summary judgment as a matter of law on the unapproved change orders. It is clear that a federal court must accord the same preclusive effect to a state court judgment as that judgment would receive under state law in a subsequent proceeding. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). Moreover, under New York law, "[i]t is [well] settled that the doctrine[s] of res judicata [and collateral estoppel are] applicable to arbitration awards and may serve to bar the subsequent relitigation of a single issue or an entire claim." *Matter of Ranni's Claim*, 58 N.Y.2d 715, 717, 458 N.Y.S.2d 910, 910–11, 444 N.E.2d 1328, 1329–30 (1982). Res judicata or claim preclusion estops a party from relitigating a claim or cause of action decided in an earlier action or which the party could have raised, but was not actually litigated, in the earlier proceed-

ing, *Schuykill Fuel Corp. v. B. & C. Nieberg Realty Corp.*, 250 N.Y. 304, 306–07, 165 N.E. 456, 457 (1929) (Cardozo, J.), because "once a judgment has been rendered by a court of competent jurisdiction, it will be treated thereafter as the full measure of relief between the same parties on the same cause of action." *Bottini v. Sadore Management Corp.*, 764 F.2d 116, 119 (2d Cir.1985) (citing *Reilly v. Reid*, 45 N.Y.2d 24, 29, 407 N.Y.S.2d 645, 648, 379 N.E.2d 172, 175 (1978)).

■ In contrast, the doctrine of collateral estoppel or issue preclusion:

> bars a party from relitigating in a second proceeding an issue of fact or law that was litigated and actually decided in a prior proceeding, if that party had a full and fair opportunity to litigate the issue in the prior proceeding and the decision of the issue was necessary to support a valid and final judgment on the merits.

*Metromedia Co. v. Fugazy*, 983 F.2d 350, 365 (2d Cir.1992) (citing cases), *cert. denied*, —— U.S. ——, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993); *S.T. Grand, Inc. v. City of New York*, 32 N.Y.2d 300, 304, 344 N.Y.S.2d 938, 941, 298 N.E.2d 105, 107 (1973) (quoting *Schwartz v. Public Adm'r of Bronx County*, 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 960, 246 N.E.2d 725 (1969)). Consequently, Ammcon seeks to invoke the doctrines of res judicata and collateral estoppel to bar HUD from relitigating the issues previously decided in the arbitral and judicial proceedings against First Baptist.

■ This Court has recently held that the preclusive effect of an Article 75 confirmation proceeding in state court is not broader than the preclusive effect of the underlying arbitration award, especially where, as here, the party against whom confirmation of the arbitration award is sought does not oppose the Article 75 proceeding. *Sewell v. New York City Transit Authority*, 809 F.Supp. 208, 213, 215 & n. 7 (E.D.N.Y. 1992). *See* Order and Judgment, *Ammcon, Inc. v. First Baptist Church of Crown Heights Dev. Fund Corp.*, Index No. 22050/87, dated October 21, 1987, at 2 (Cohen, J.) (confirming arbitration award against First Baptist based on the evidence presented by Ammcon and "there being no one

appearing in opposition") (Ex. G to Mazzucca Aff.); Judgment, Index No. 22050/87, dated March 18, 1988 at 2 (same quote) (Ex. H to Mazzucca Aff.). Accordingly, the issue presented in this case is simply whether the arbitration award which Ammcon obtained against First Baptist, HUD's alter ego, precludes HUD from relitigating the arbitrators' determination. This Court holds that it does.

Section 7511 of the New York Civil Practice Law and Rules sets forth the statutory grounds for modification or vacation of an arbitral award. Motions to vacate or to modify an award by parties or non-parties to the arbitration proceeding must be made within ninety days after delivery of the arbitration award to the movant. N.Y.Civ.Prac.L. & R. § 7511(a)–(c). In this case, since HUD is the alter ego of First Baptist, it is in privity with First Baptist and will be estopped from relitigating the issues decided in arbitration. *Sanders*, 903 F.2d at 121 (citing *Gramatan Home Investors Corp. v. Lopez*, 46 N.Y.2d 481, 486, 414 N.Y.S.2d 308, 311, 386 N.E.2d 1328, 1331 (1979)); *Shire Realty Corp. v. Schorr*, 55 A.D.2d 356, 363, 390 N.Y.S.2d 622, 627 (2d Dep't 1977).[6] In addition, HUD is liable for change orders approved by its alter ego, First Baptist, notwithstanding that HUD itself did not pre-approve those work orders. Accordingly, HUD's motion for partial summary judgment as to the unapproved change orders is denied.[7]

### D. Ammcon's Motion for Summary Judgment

Ammcon contends that it is entitled to summary judgment that HUD is liable for the arbitration award entered against First Baptist and for the $28,940.78 Note executed by First Baptist because First Baptist is HUD's alter ego. However, this Court is drawn to conclude that summary judgment is inappropriate at this juncture, and that HUD's request for a continuance under Fed. R.Civ.P. 56(f) to depose the individuals present at the June 4, 1987 closing is well founded. The party seeking a continuance under Rule 56(f) must submit an affidavit setting forth "(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort [he] has made to obtain them, and (4) why [he] was unsuccessful in those efforts." *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 422 (2d Cir.1989) (citing *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir. 1985)). HUD has submitted an affidavit of Stephen Riegel, dated May 21, 1992, which makes abundantly clear that it needs to conduct discovery in this action.

First, HUD wishes to ascertain the authenticity of a two-page handwritten note between Ammcon and First Baptist apparently reserving Ammcon's rights to enforce the arbitration award even after the final closing on June 4, 1987. Ammcon contends that HUD was aware of that document, but HUD has submitted affidavits disputing that claim. *See* Sprenger Aff. ¶¶ 15–16. If that handwritten document was not presented to HUD at closing, a genuine issue of triable

---

**6.** Furthermore, even if HUD was not a party to the arbitration proceeding, it should have moved the state court to vacate or to modify the arbitration award under § 7511 within ninety days of its receipt of a copy of that award. This Court cannot sanction HUD's glaring attempt to circumvent New York's statutory scheme relating to arbitration awards by allowing it to relitigate Ammcon's arbitration award in this proceeding.

**7.** Since this Court holds that First Baptist was HUD's alter ego, it need not address Ammcon's alternative argument that there is a factual dispute whether HUD was invited to participate in the arbitration proceeding so as to be bound by that determination under the "vouching in" theory. *See Sanders*, 903 F.2d at 121 (citing *Fidelity and Deposit Co. v. Parsons & Whittemore Contrac-*

*tors Corp.*, 48 N.Y.2d 127, 131–32, 421 N.Y.S.2d 869, 871–72, 397 N.E.2d 380, 383 (1979)). It is noted that HUD would have declined to participate in the arbitration proceeding whether or not it was invited to attend in light of its consistent position that it "consider[s] ... arbitration to be 'essentially a private dispute' between [the nonprofit corporate sponsor] and [the contractor]." *Sanders*, 903 F.2d at 117. *See also* Memorandum from Joseph Monticcilio, Regional Administrator, Regional Housing Commissioner, to Thomas Demery, Assistant Secretary for Housing/Federal Housing Commissioner, Re: David Chavis Apartments, dated November 30, 1987, at fourth paragraph ("Generally, we have refused to be a party to arbitration, and are not bound legally by its outcome."). Ex. R to Sprenger Aff.

fact exists as to whether Ammcon's conduct at closing waived its rights to collect additional funds from First Baptist or from HUD. Specifically, Ammcon executed an agreement at closing, dated June 4, 1987, stating that: "This will confirm that at closing today the unpaid items shown as due to contractor on Mortgagor's Certificate of Actual Cost are being paid." Ex. E to Mazzucca Aff. According to HUD, this led it to believe that Ammcon was waiving any future rights to collect unpaid monies or else HUD would have refused to loan any funds to First Baptist at closing. *See* Pl.'s Mem. of Law in Opp'n at 35–37. Furthermore, Ammcon moved for summary judgment even before HUD filed an answer and before discovery had begun in this action, and, in fact, no further discovery has been conducted to date. Riegel Aff. ¶¶ 3, 10. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 2511 n. 5, 91 L.Ed.2d 202 (1986) (Under Rule 56(f) "summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."); *see id.* at 257, 106 S.Ct. at 2514 ("The nonmovant must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the [movant], *as long as the [nonmovant] has had a full opportunity to conduct discovery.*") (emphasis supplied). Accordingly, HUD must be afforded an opportunity to depose Anthony Mazzucca, Ammcon's principal, who claims to recall vividly in May 1992 what transpired at a closing in June 1987, *see* Reply Aff. of Anthony Mazzucca, dated May 7, 1992, and to depose the other individuals who attended that closing to ascertain whether HUD was aware of Ammcon's reservation of rights. *See* Def.'s Reply Mem. of Law in Supp. at 16–16–19; Riegel Aff. ¶¶ 4–9; Def.'s Mem. of Law in Opp'n at 42–43.

### CONCLUSION

For the foregoing reasons, Ammcon's motion for summary judgment and HUD's cross-motion for summary judgment are denied. The government's request for a continuance to conduct discovery is granted. The parties shall arrange a status conference be-fore this Court within sixty days from the date of this order to report on the status of discovery.

SO ORDERED.