**CRYSTALLINE H₂O, INC., Plaintiff,**

v.

**Edward D. ORMINSKI and William A. Kerr, Jr., d/b/a Ortec Development Group, and Ortec Development Group, Inc., Defendants.**

**4**

No. 99–CV–1311.

United States District Court,
N.D. New York.

June 12, 2000.

Ganz & Wolkenbreit, Albany, NY, Robert E. Ganz, of counsel, for Plaintiff.

Ianniello, Anderson & Reilly, Clifton Park, Anthony R. Ianniello, Matthew I. Mazur, of counsel, for Defendants.

**DECISION AND ORDER**

McAVOY, District Judge.

The present dispute arises out of Plaintiff Crystalline $H_2O$, Inc.'s ("Crystalline") discovery of an inexpensive and convenient product designed to sanitize swimming pools and its purported agreement with Defendants Edward Orminski, William Kerr, Jr., d/b/a Ortec Development Group and Ortec Development Group, Inc. (collectively "Defendants") to market and sell that product in the United States. In connection with that arrangement, Plaintiff, a start-up French Canadian corporation, apparently entered into a long-term marketing, sales and distribution agreement with Defendants, a New York sales and marketing professional corporation, which is the subject of the instant litigation.

**I. Background**

Plaintiff commenced the present action on August 19, 1999, seeking to void a 20–year marketing, sales and distribution agreement on the grounds that: (1) Daniele Henkel, Plaintiff's agent/consultant/business advisor/translator, had a conflict of interest at the time the contract was negotiated and executed (First Cause of Action), see Compl. at ¶¶ 32–35; (2) the contract is indefinite because it lacks essential elements with respect to the (i) financing of the marketing campaign and (ii) allocation of the cost of delivery and risk of loss once the product is shipped from Plaintiff's manufacturing site (Second Cause of Action), see id. at ¶¶ 36–40; and (3) the contract lacks mutuality of obligation because Defendants' obligation to purchase the Crystalline product is illusory (Third Cause of Action), see id. at ¶¶ 41–43. Plaintiff also alleges a claim of tradename infringement over Defendants' use of the name "Crystalline Pool Systems," and seeks to enjoin Defendants from using that name in connection with their business (Fourth Cause of Action), see id. at ¶¶ 44–56, and, if the Court does not void the contract, Plaintiff alleges a breach of contract claim based on Defendants' anticipatory repudiation of its obligation under the contract to purchase 300,000 units of Crystalline $H_2O$ (Fifth Cause of Action). See id. at ¶¶ 57–60. Presently before the Court is Plaintiff's motion for summary pursuant to FED. R. CIV. P. 56 with respect to the Second, Third, Fourth, and Fifth Causes of Action in the Complaint. See Notice of Motion at 1. Specifically, Plaintiff seeks a declaration that the October 30, 1997 agreement executed by the parties is void and unenforceable as a matter of law or, in the alternative, judgment in favor of Plaintiff on its breach of contract claim. Plaintiff also seeks injunctive relief enjoining Defendants from utilizing the "Crystalline Pool Systems" name in connection with its business.

In their Answer, Defendants raise numerous affirmative defenses and counterclaims to the Complaint. With respect to their affirmative defenses, Defendants allege that: (1) Henkel was not in a fiducia-

ry relationship with Plaintiff and did not act in a "dual role" in her role in negotiating the October 1997 agreement (First Cause of Action), see Answer at ¶¶ 61–67; (2) the October 1997 agreement contained all of the essential terms and, thus, conveyed to Defendants the marketing, sales and distribution rights with respect Plaintiff's product (Second Cause of Action), see id. at ¶ 68; (3) if the October 1997 agreement is determined to be indefinite, parole evidence, e.g., trade usage and the parties prior business dealings, should be used to determine the meaning of the provisions of the agreement (Second Cause of Action),[1] see id. at ¶¶ 69–72; (4) the October 1997 agreement did not lack mutuality of obligation because it conveyed to Defendants the marketing, sales and distribution rights to Plaintiff's product in exchange for Defendants' "good faith" implementation of a marketing plan (Third Cause of Action), see id. at ¶¶ 73–74; (5) the parties agreed that Defendants' counsel would provide the necessary services "to protect the name of the product to be manufactured by Plaintiff and to be distributed by [D]efendant[s]" (Fourth Cause of Action), id. at ¶ 75; (6) Plaintiff failed to perform the conditions precedent to Defendants' performance under the agreement, i.e., "produce a product [that] was saleable in any location outside of Canada" (Fifth Cause of Action), id. at ¶¶ 80–81; (7) the time during which Defendants are re-

quired to perform under the agreement has not run in light of the approval requirements established by the U.S. Environmental Protection Agency ("EPA") (Fifth Cause of Action), see id. at ¶¶ 82–84; and (8) Defendants Orminski and Kerr never agreed to be personally liable for, or guarantee the performance of, Ortec's performance under the agreement. See id. at ¶¶ 85–89.

Defendants also raise numerous counterclaims to Plaintiff's claims and more specifically, the October 1997 agreement that is the basis of both the Complaint and Plaintiff's instant motion for summary judgment. Defendants' counterclaims include: (1) breach of contract, see id. at ¶¶ 90–95 (delivery of Crystalline product by Plaintiff and implementation of a marketing plan) and ¶¶ 113–23 (payment for marketing services performed by Defendants); (2) breach of contract implied in fact, see id. at ¶¶ 96–101 (delivery of Crystalline product by Plaintiff) and ¶¶ 131–35 (payment for marketing services performed by Defendants); (3) promissory estoppel, see id. at ¶¶ 102–06; (4) quantum meruit, see id. at ¶¶ 107–12 (payment for marketing services performed by Defendants in preparation of distributing Plaintiff's product); ¶¶ 124–30 (payment for other marketing consultation services performed by Defendants); and ¶¶ 149–53 (payment for services performed by De-

---

1. Central to the present dispute is whether the October 1997 agreement contains the essential terms to form a valid and enforceable contract. As previously noted, Plaintiff's argument that the agreement fails for indefiniteness is predicated on a failure to: (1) delineate each parties' financial responsibility for costs associated with the implementation and long-term financing for the proposed marketing campaign; and (2) specify the manner in which Plaintiff's product would be delivered and which party would bear the delivery costs and risk of loss for products shipped by Plaintiff. See Pl. Mem. of Law at 9–14.

With respect to the first point, Defendants allege that the "[c]ourse of conduct of the parties including prior, contemporaneous and post-contract agreements and payments for ORTEC's marketing services establishes that

the parties understood that ORTEC's marketing services establishes that the parties understood that ORTEC's marketing services were only available by separate remuneration." Answer at ¶ 71. With respect to the second point, Defendants allege that "[t]rade usage and the course of conduct of the parties establishes that products were to be purchased and shipped 'F.O.B.' Plaintiff's manufacturing facility so that all expenses of shipping and insurance (and commensurate rules as to risk of loss) would be borne by ORTEC upon delivery to a shipper at Plaintiff's manufacturing plant." Id. at ¶ 72. Interestingly, Plaintiff takes a contrary position in his Memorandum of Law, asserting that "Defendants['] position that it would, without an explicit reference in the agreement, accept FOB seller's plant is hardly believable." Pl. Mem. of Law at 11.

fendants in connection with registering Plaintiff's product with the EPA); (5) breach of implied contract for tradename protection, *see id.* at ¶¶ 136–42; and (6) breach of contract implied in fact for EPA registration services performed by Defendants, *see* id. at ¶¶ 143–48. In total, Defendants raise nine affirmative defenses and ten counterclaims in response to Plaintiff's five causes of action.

The Court assumes familiarity with the procedural and factual background set forth in its prior bench decision in this matter. *See Crystalline H₂O, Inc. v. Orminski,* 99–CV–1311 bench decision dated December 13, 1999 ("Bench Decision") (attached to Notice of Motion at Ex. B). In that decision, the Court denied Defendants' motion to dismiss the Complaint pursuant to FED. R. CIV. P. 12(b)(6) and (7). *See id.* at 3–12.

## II. Discussion

As a threshold matter, the parties dispute whether Defendants should be entitled to discovery before Plaintiff moves for summary judgment. Specifically, Defendants argue that Plaintiff's motion for summary judgment is premature in light of the fact that discovery has not yet commenced and the only submissions before the Court are the pleadings and the parties' affidavits. *See* Defs. Mem. of Law at 6–7; Affidavit of Matthew Mazur, Esq. ("Mazur Aff.") at ¶¶ 3–5. In his moving papers, Plaintiff generally argues that the absence of discovery is not a bar to entry of summary judgment in favor of Plaintiff because there are no disputed factual issues underlying Plaintiff's claims and Defendants' request for additional discovery is too speculative and irrelevant to the issues before the Court. *See* Pl. Mem. of Law at 6–8. Notably, Plaintiff does not dispute that discovery has not commenced and, moreover, does not address this issue in his reply papers. Accordingly, before considering the merits of the instant motion, the Court will first consider whether a grant of summary judgment is premature at this stage.

FED. R. CIV. P. 56(f), which addresses cases where a litigant opposing summary judgment requests additional discovery, provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

FED. R. CIV. P. 56(f) (West 2000).

In connection with a motion made pursuant to Rule 56(f), the party opposing a motion for summary judgment generally must file an affidavit explaining: "1) the nature of the uncompleted discovery, i.e., what facts are sought and how they are to be obtained; and 2) how those facts are reasonably expected to create a genuine issue of material fact; and 3) what efforts the affiant has made to obtain those facts; and 4) why those efforts were unsuccessful." *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,* 769 F.2d 919, 926 (2d Cir.1985) ("*Burlington*"); *see also Paddington Partners v. Bouchard,* 34 F.3d 1132, 1138 (2d Cir.1994); *Hudson River Sloop Clearwater, Inc. v. Department of Navy,* 891 F.2d 414, 422 (2d Cir.1989). "[A] denial of access to relevant information weighs in favor of the party opposing a motion for summary judgment." *Burlington,* 769 F.2d at 925; *see also McVan v. Bolco Athletic Co.,* 600 F.Supp. 375, 378 (E.D.Pa.1984) ("Under many circumstances, parties seeking relief under Rule 56(f) should be granted that relief almost as a matter of course.") (quotation omitted).

There is a critical distinction, however, between cases where a litigant opposing a motion for summary judgment requests a stay of that motion to conduct *additional* discovery and cases where that same liti-

gant opposes a motion for summary judgment on the ground that it is entitled to an opportunity to *commence* discovery with respect to Plaintiff's claims and its counterclaims. In the present case, the Court is faced with the latter scenario. This distinction was noted by the Supreme Court in its often-cited decision in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986):

> Th[e] requirement [that the adverse party must set forth specific facts showing that there is a genuine issue for trial] . . . is qualified by Rule 56(f)'s provision that *summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.* In our analysis here, we assume that both parties have had ample opportunity for discovery.

*Id.* at 250 n. 5, 106 S.Ct. 2505 (emphasis added).

Significantly, the cases relied on by Plaintiff (all within the Third Circuit) and identified by the Court dealing with requests under Rule 56(f) deal primarily with requests by the nonmoving party for *additional* discovery; namely, where the parties have commenced discovery and had the opportunity to conduct depositions and obtain interrogatories. *See, e.g., B.F. Goodrich v. Betkoski*, 99 F.3d 505, 523 (2d Cir.1996) ("Rule 56(f) allows a party faced with a motion for summary judgment to request additional discovery, and the Supreme Court has suggested that such a request be granted when the nonmoving party has not had an opportunity to make full discovery.") (quotation omitted), *cert. denied*, 524 U.S. 926, 118 S.Ct. 2318, 141 L.Ed.2d 694 (1998); *Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995); *Trebor Sportswear Co., Inc.*, 865 F.2d at 512 (denying request under Rule 56(f) for further discovery where "appellants had ample time to conduct discovery"); *Contemporary Mission, Inc. v. The New York Times Co.*, 842 F.2d 612, 622 (2d Cir.), *cert. denied*, 488 U.S. 856, 109 S.Ct.

145, 102 L.Ed.2d 117 (1988); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 228 (3d Cir.1987); *Burlington*, 769 F.2d at 925–26; *Mid–South Grizzlies v. National Football League*, 720 F.2d 772, 777 (3d Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2657, 81 L.Ed.2d 364 (1984); *Robin Constr. Co. v. United States*, 345 F.2d 610, 611–12 (3d Cir.1965). Thus, these cases are factually distinct from present case where Defendants have not had the opportunity to conduct any discovery with respect to Plaintiff's claims and their numerous counterclaims that are based, in part, on the same events and transactions underlying those claims. Moreover, Plaintiff does not contend that the parties did not commence discovery because of delays or inaction on the part of Defendants. In light of this distinction and Defendants' uncontested allegation that the parties have not yet commenced discovery in this case, *see* Defs. Mem. of Law at 6; Mazur Aff. at ¶ 5, the present situation is on different footing from the situation where a party has had "an insufficient opportunity for discovery," Pl. Mem. of Law at 6, which arguably implies that some discovery has taken place.

The Second Circuit has recently stated that "[o]nly in the rarest of cases may summary judgment be granted against a [party] who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir.2000). The Court in *Hellstrom* noted that:

> [S]ummary judgment should only be granted *[i]f after discovery*, the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof. *The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment.*

*Id.* (brackets in original) (quotations omitted) (emphasis added).

The Second Circuit has denied motions for summary judgment as premature in cases where nonmoving party did not have "a fully adequate opportunity for discovery," *Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989), at the time the moving party sought summary judgment. *See Hellstrom*, 201 F.3d at 97; *Berger v. United States*, 87 F.3d 60, 65 (2d Cir.1996) (quotations omitted); *Sutera v. Schering Corp.*, 73 F.3d 13, 18 (2d Cir.1995) (reversing summary judgment granted "before any discovery had taken place"); *see also Ammcon, Inc. v. Kemp*, 826 F.Supp. 639, 647 (E.D.N.Y. 1993); *Wright v. Eger*, 224 A.D.2d 795, 637 N.Y.S.2d 514, 514–15 (3d Dep't 1996); *cf. Trebor Sportswear Co.*, 865 F.2d at 511 ("The nonmoving party should not be 'railroaded' into his offer of proof in opposition to summary judgment. The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment. But the trial court may properly deny further discovery *if the nonmoving party has had a fully adequate opportunity for discovery.*") (quotations and internal citations omitted) (emphasis added); *Carter v. AT & T Communications*, 759 F.Supp. 155, 160 (S.D.N.Y.1991) ("Subdivision (f) of Rule 56 of the Federal Rules of Civil Procedure, allowing a continuance for discovery, is applied with a spirit of liberality as a safeguard against an improvident or premature grant of summary judgment.") (internal quotation and footnote omitted). Accordingly, Defendants must be afforded an opportunity to conduct discovery to clarify the events surrounding the negotiation and execution of the October 1997 agreement and to ascertain the intentions of the parties at that time.

Although the affidavit filed by Defendants' counsel regarding the need to conduct discovery is arguably general, this can be explained, in part, by the fact that discovery has not yet commenced and defense counsel has not yet had the benefit of conducting depositions or obtaining interrogatories from Plaintiff concerning the events surrounding the negotiation and formation of the October 1997 agreement that is at the heart of the present dispute. At the very least, Defendants should be permitted to conduct limited discovery with respect to each parties' intentions and expectations regarding their respective roles and financial responsibilities for implementing a marketing campaign and allocating delivery costs for Plaintiff's product. Such an approach makes sense given the duration and financial magnitude of the October 1997 agreement and the differing interpretations advanced by each of the parties regarding the terms of that agreement.[2] *See, e.g., Flug v. Carag*, 1995 WL 567431, at *4 (S.D.N.Y. Sept.25, 1995). Accordingly, the determination of whether the parties came to a meeting of the minds on the essential terms of the October 1997 agreement "would be far better suited to summary judgment treatment following ... discovery, if not a trial."[3] *Realty*

**2.** Much of the present dispute revolves around whether the parties came to a meeting of the minds with respect to certain essential terms of the agreement; namely, each parties' financial responsibilities for implementation and maintenance of a marketing campaign and delivery costs associated with shipment of Plaintiff's product. In his Memorandum of Law, Plaintiff argues that: "The parties were unable, despite their expressed intention, to come to a meeting of the minds as to those essential terms, and therefore, a binding contract does not exist." Pl. Mem. of Law at 11. Given the parties' competing arguments regarding these issues, some discovery is necessary to flesh out the parties' intentions at the time the October 1997 agreement was negotiated and executed. *See, e.g., General Auth. For Supply Commodities, Cairo, Egypt v. Insurance Co. of N. Am.*, 951 F.Supp. 1097, 1112–13 (S.D.N.Y.1997).

**3.** Contrary to Plaintiff's contention, *see* Pl. Mem. of Law at 12, the Court did not find, as a matter of law, that the responsibilities for marketing and delivery costs were essential terms of the October 1997 agreement. Rather, the Court found that, "Because Defendants have failed to establish at this early stage of the litigation that '[P]laintiff can prove no set of facts in support of [its void for indefiniteness claim]' which would entitle [it]

*Investors of USA Inc. v. Bhaidaswala,* 254 A.D.2d 603, 679 N.Y.S.2d 179, 181 (3d Dep't 1998); *see also Reiss v. GAN S.A.,* 78 F.Supp.2d 147, 158 (S.D.N.Y.1999) ("Although not a paradigm of specificity, I do not find that the alleged agreement is sufficiently vague to justify dismissing the Complaint prior to discovery as to the prior course of dealings between the parties and, perhaps, customs and practices in this industry regarding finder's agreements."); *General Auth. For Supply Commodities, Cairo, Egypt v. Insurance Co. of N. Am.,* 951 F.Supp. 1097, 1112–13 (S.D.N.Y.1997); *Zucker v. Katz,* 708 F.Supp. 525, 532 (S.D.N.Y.1989) ("Whether these [essential material] terms are too indefinite to be enforced is an issue better left for summary judgment or trial, at which time the Court can better consider whether the parties themselves meant to make a contract and to bind themselves.") (quotation omitted).

A grant of summary judgment in favor of Plaintiff would be equally unfair and imprudent in light of the related counterclaims and affirmative defenses raised by Defendants, "which are inextricably interwoven with and inseparable from the issues raised in the [P]laintiff's [C]omplaint." *Boston Concessions Group, Inc. v. Criterion Ctr. Corp.,* 200 A.D.2d 543, 606 N.Y.S.2d 696, 697 (1st Dep't 1994) (citing *Created Gemstones, Inc. v. Union Carbide Corp.,* 47 N.Y.2d 250, 254, 417 N.Y.S.2d 905, 391 N.E.2d 987 (1979)); *see also Flug,* 1995 WL 567431, at *4; *Illinois McGraw Elec. Co. v. John J. Walters, Inc.,* 7 N.Y.2d 874, 876–77, 196 N.Y.S.2d 1003, 164 N.E.2d 872 (1959), *reargument denied,* 7 N.Y.2d 1054, 200 N.Y.S.2d 1025, 167 N.E.2d 86 (1960); *Pease & Elliman, Inc. v. 926 Park Ave. Corp.,* 23 A.D.2d 361, 260 N.Y.S.2d 693, 695 (1st Dep't 1965), *aff'd,* 17 N.Y.2d

890, 271 N.Y.S.2d 992, 218 N.E.2d 700 (1966).

The flaw in Plaintiff's argument is that it misperceives the current stage of discovery. Simply put, Defendants are not seeking additional discovery in a case where they were given the opportunity to conduct discovery. Plaintiff's legal arguments are based on cases decided by courts outside this Circuit that deal primarily with requests by the nonmoving party to seek additional discovery in the face of a motion for summary judgment. *See* Pl. Mem. of Law at 6–7. Here, however, Defendants are merely seeking the opportunity to commence discovery with respect to Plaintiff's claims *and* their counterclaims.

In sum, this is not the typical case where one party seeks to continue or seek additional discovery under Rule 56(f) when faced with a motion for summary judgment. Rather, the Court is faced with the very different scenario where one party is seeking summary judgment before the other party has had a chance to commence discovery. The present situation is further complicated by the fact that the majority of Defendants' counterclaims are intertwined with the claims upon which Plaintiff seeks summary judgment. Without the benefit of discovery, Defendants may be prejudiced by a premature entry of summary judgment with respect to Plaintiff's claims. Of course, Plaintiff is free to renew his motion for summary judgment at any time after discovery has commenced and Defendants have had an opportunity to conduct discovery on the relevant and material issues underlying Plaintiff's claims and Defendants' counterclaims.

Accordingly, in light of the fact that discovery has not yet commenced and that Defendants' counterclaims are intertwined

---

to relief," *Dangler v. New York City Off Track Betting Corp.,* 193 F.3d 130, 138 (2d Cir.1999) (quotation omitted), Defendants' motion to dismiss the second cause of action is denied. Bench Decision at 10. Moreover, the procedural posture applicable in Defendants' earlier Rule 12(b)(6) motion is much different than

that applicable to a motion for summary judgment brought under Rule 56. *MacDonald v. Safir,* 206 F.3d 183, 190 (2d Cir.2000). "This means that it is quite possible to reach the opposite result in the same case, depending on the applicable standard of review." *Id.*

with Plaintiff's claims, and that "voiding an agreement for absence of an essential term is a step that courts should take only in rare and extreme circumstances," *Shann v. Dunk*, 84 F.3d 73, 81 (2d Cir.1996), the Court finds that Plaintiff's motion for summary judgment should be denied as premature. The Court, therefore, expresses no view with respect to the merits of Plaintiff's claims or Defendants' defenses and counterclaims.

## III. Conclusion

For the foregoing reasons, it is hereby

**ORDERED**, that Plaintiff's motion for summary judgment with respect to the Second, Third, Fourth, and Fifth Causes of Action in the Complaint is **DENIED**.

**IT IS SO ORDERED.**